CHRISTOPHER C. COMFORT *v.* CITY OF KOSCIUSKO.

[41 South. Rep., 268.]

1. MUNICIPALITIES.  *Hogs.*  *Code* 1892, § 2928.  *Nuisances.*

Under code 1892, § 2928, empowering municipalities to prevent and abate nuisances, and to suppress hogpens, etc., a municipality may prevent hogs being kept within its limits only when the keeping of them is a nuisance.

2. SAME.  *Ordinance.*

A municipal ordinance providing generally that hogs shall not be kept within municipal limits, without reference to whether they be or be not a nuisance, is invalid.

FROM the circuit court of Attalla county.

HON. J. T. DUNN, Judge.

Comfort, the appellant, was convicted of violating the ordinance of the city of Kosciusko, set out in the opinion of the court, which sought to prohibit the keeping of hogs within the city limits. The prosecution was begun in the municipal court, the case was, upon conviction there, appealed by Comfort to the circuit court of the county; and from a conviction therein, Comfort appealed to the supreme court. The facts are stated in the opinion of the court.

*Luckett & Guyton; Anderson, Davis & Sawyer,* and *J. S. Smith,* for appellant.

Before a municipality can prosecute, it must show a valid ordinance. *Derringer* v. *Recorder's Court of Romona,* 79 Mass., 360; *McMinnville* v. *Stroud,* 109 Tenn., 569.

When the legislature of the state assumes to act and specifies the powers of municipal corporations over nuisances and cognate matters, the municipality acting under the municipal charter cannot enlarge the powers as therein expressly designated. Black's Constitutional Law, sec. 110.

The ordinance in question is conceded to have been passed under sec. 2928 of the annotated code of 1892 of Mississippi, commonly called the "nuisance clause." This clause gives no power to a municipal corporation to make a thing, in the eye of the law, a nuisance simply by declaring it to be a nuisance, and if it did, we submit that the ordinance itself makes no such declaration in this case. A hog *per se* is not a nuisance. The intent of the legislature is the law. "That which is within the letter of the law is not within the law unless it be within the meaning of the makers." What did the legislature mean when it gave the municipality power to suppress hog pens, slaughter houses, and stock yards, and to regulate the same?

To suppress hog pens does not mean to prohibit the keeping of hogs within the city limits. To prohibit the latter means in effect to declare a hog a nuisance *per se,* and if the legislature intended this, it would have so declared. The legislature gives to the municipality power, in order to prevent, remove and abate nuisances, to legislate against a condition created by a hog or other thing, but not the hog or thing itself.

There are two sections in the code of Mississippi of 1892 pertaining to nuisances, and one refers to the other. See secs. 2928 and 2277. The former gives certain specified powers to the municipality over nuisances; the other prescribes the power of the state board of health over the same subject-matter. The state board of health, when informed by the county health officer of the existence of any matter or thing calculated to produce, aggravate or cause the spread of any epidemic or contagious disease or to effect injuriously the health of the public or community, may declare the same a nuisance. But this declaration is not final, and whether or not it is a nuisance is a question of fact to be thereafter judicially determined, just as we contend is true in the case at bar. The legislature certainly never intended to give to the municipality greater power to regulate sanitation and prohibit nuisances than it did the state board of health.

It was well observed by Mr. Justice MILLER, speaking for the supreme court of the United States in *Yates* v. *Milwaukee,* 77 U. S. (*infra*) : "It is a doctrine not to be tolerated in this country that a municipal corporation can by its mere declaration that a structure is a nuisance, subject it to removal by any persons supposed to be aggrieved, or even by the city itself." It must be manifest to this court that the operation and effect of the ordinance in the case at bar is not only to prohibit the bringing into and the keeping within the city limits of hogs, but also to cause at once the removal of those hogs already kept within the city limits, and that, too, regardless of the condition in which they might be kept.

A hog in the city of Kosciusko (as in the city of Jackson) may or may not be a nuisance, and any ordinance drawn on the subject must be framed accordingly.    *Ex parte O'Leary,* 65 Miss., 80 (s.c., 3 South. Rep., 144).

If this board of mayor and Aldermen can declare that no hog shall be kept in the city of Kosciusko, why can it not with equal propriety say that no horse or cow shall be permitted within the city limits ?   What is the distinction as a matter of law ?

*F. M. West,* and *J. G. Smythe,* for appellee.

Two questions are presented in this case for decision : (1) Had the municipality of Kosciusko the power to pass the ordinance in issue in the case at bar ?    (2) If it had the power, was the ordinance legally passed ?

In answer to the first question, we cite the case of *Darlington* v. *Ward,* 38 L. R. A., 326, *et seq.,* and quote therefrom.   The facts in that case and the points therein are identical with those of the case at bar.    There the town of Darlington passed an ordinance, in effect the same as the ordinance in this case—that is, prohibiting the keeping of hogs in the corporate limits.   In that case, as in this one, it was not a question of the size of the pen in which the hog was kept, nor the condition of the pen.   The court said, in deciding that case, in discussing the power of

municipalities to adopt ordinances for the regulation of its affairs of health and police powers: "In such cases I think the true thing is, that such ordinances may be declared invalid only when they are so clearly unreasonable, oppressive, or violative of common right as to justify a court in concluding that the legislature did not intend to grant such power in the charter. In the last analysis, it is a question of legislative intent, and not a question of reasonableness. But, whatever may be the rule in reference to the implied power of a municipality, I think it is clear that when the legislature, having power to authorize, does empower a municipal corporation to pass such ordinances on a specific subject, and such ordinances are passed within the power conferred, the courts have nothing whatever to do with the reasonableness of the ordinance." And further: "Assuming for the present, that the town council had the power to pass the ordinance, no question can be made whether 'a nuisance' had been created, nor whether the restrictions complained of were necessary to accomplish the purpose in view. It was their exclusive right to judge what was necessary and requisite to preserve the health of the town."

Mr. Justice Jones, in discussing the facts in the *Darlington case,* speaking for the court, says: "The presumptions are all in favor of the reasonableness of the ordinance. The burden of showing that the ordinance is not reasonable is upon him who assails it," and concluding, says: "Is the power of a town council to preserve the public health to be measured by the size of Mr. Ward's lot? Does the cleanly condition in which he keeps his premises relate in any way to the question whether the keeping of hogs within the limits of Darlington is or may become prejudicial to the health of the people of the town?"

The authority to pass the ordinance in this case is unquestioned and is conferred under the general police regulations, sec. 2938, and under the section, "Nuisances and cognate matters," sec. 2938, Code 1892.

In the *O'Leary case,* 65 Miss., 80 (s.c., 3 South. Rep., 144), cannot be taken as authority for the decision of the case at bar.

The question there presented to the court was whether a mere legislative declaration that "a thing was a nuisance" did make it so, where the thing itself was not a nuisance.  Jackson, at the time of the passage of that ordinance, was operating under a special charter, while Kosciusko was and is operating under the municipal chapter of the code of 1892.  Also, the Jackson ordinance declared hog pens in the city of Jackson to be a nuisance, and excepted from the operation of the ordinance those very pens and slaughter houses which, in the nature of things, were most likely to be, or become, a nuisance, while the ordinance in the case at bar makes no discrimination.

MAYES, J., delivered the opinion of the court.

On the 27th day of July, 1905, the city of Kosciusko passed the following ordinance:

*"Be it ordained by the mayor and board of aldermen of the city of Kosciusko,* That in order that the said city shall be clean and put and kept in a good sanitary condition to prevent the generation and spread of disease, it shall be unlawful for any person to keep or permit to be kept on or about his or her premises within the corporate limits of said city any rubbish, garbage, or filth of any kind, or to keep or permit to be kept on his said premises any stagnant or filthy water, or to drain any bath, kitchen, or otherwise polluted water into any of the streets of said city, or to keep or permit to be kept within the corporate limits of said city any pig, or pigs, hog, or hogs.  Any person who shall be guilty of any act or acts enumerated in this ordinance shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in a sum of not less than five dollars."

On the 14th day of August, 1905, an affidavit was made against Comfort in the mayor's court of Kosciusko, charging in substance that Comfort did, on and about the 11th day of August, 1905, in the corporate limits of the city of Kosciusko, willfully and unlawfully permit to be kept hogs, and did keep hogs penned and inclosed, on and about his premises in said city, against the

ordinance of said city.    Mr. Comfort was convicted in the
mayor's court, appealed to the circuit court, demurred to the affi-
davit, which demurrer was overruled by the circuit court, and he
was again convicted in the circuit court, and prosecutes this
appeal, claiming that the ordinance under which he is convicted
is void.

Section 2928 of the annotated code of 1892 empowers munici-
palities to suppress hog pens.    It also gives the power to make
regulations to secure the general health of municipalities and
to prevent, remove, and abate nuisances.    The keeping of hogs
in a municipality, or the erection of hog pens, may or may not
be a nuisance, and it is only when they are such that a municipal-
ity has the power to interpose and suppress hog pens or prevent
the keeping of hogs in a municipality.    An ordinance which
provides generally that hogs may not be kept in a municipality,
without reference to whether they are or are not a nuisance, is
too broad and sweeping in its provisions, and cannot be upheld.
When the keeping of hogs within a municipality becomes a nui-
sance, no matter where they may be kept therein, it not only has
the power, but it is its duty to abate the same.    In the case of
*Darlington* v. *Ward* (S. C.), 26 S. E. Rep., 906 (38 L. R. A.,
326), cited by counsel, we think the court went too far.    In truth,
this case seems to stand by itself in the extent to which it has gone
in upholding municipalities in the right to prohibit the keeping
of hogs within its borders.    *Ex parte O'Leary,* 65 Miss., 80 (3
South. Rep., 144;  7 Am. St. Rep., 640).

*Let the case be reversed, and affidavit dismissed.*