## DESPORTE *v.* CITY OF BILOXI.*

(In Banc. June 9, 1924.)

[1·00 So. 387. No. 23415.]

1. MUNICIPAL CORPORATIONS. *Ordinance beyond statutory authority to prohibit nuisance void.*

  The authority of municipalities to prohibit and abolish nuisances and cognate matters is contained in section 3319, Code 1906 (Hemingway's Code, section 5816). Any ordinance of a municipality undertaking to prohibit or abate nuisances, which extends beyond the power conferred by said statute, is void.

2. MUNICIPAL CORPORATIONS. *Municipality may not prohibit condition as nuisance, unless so in fact.*

  Municipalities are without authority to prohibit or abate a condition upon the ground that it is a nuisance, unless in truth and in fact it be a nuisance.

  HOLDEN, J., dissenting.

---

*Headnotes 1. Municipal Corporations, 28 Cyc, p. 715; 2. Municipal Corporations, 28 Cyc, p. 716.

APPEAL from chancery court of Harrison county.

HON. V. A. GRIFFITH, Chancellor.

Suit by Mrs. Sophie Desporte against the city of Biloxi. From a decree dismissing the bill, plaintiff appeals. Reversed, and judgment rendered.

*F. W. Elmer* and *Mize & Mize,* for appellant.

From the testimony, it will be seen that appellant has been in business at her present location for over twenty years and has built up a very valuable business with a net income to her of five thousand dollars a year; has built up from year to year the ground on which her plant is located by the use of shells; that her business is not *per se* a nuisance. Of course, some of the witnesses say that it could be conducted in such a way that it could be a nuisance, but this would be true of almost any business and the law is ample for the abatement of a nuisance if conditions became such that it was a nuisance. The chancellor found as a fact that it was not a nuisance. The most that can be said against appellant's place of business is that its removal is desired by some from an æsthetic point of view—that the buildings obstruct the view of the water, etc., but this would apply as well to the other buildings and businesses now along the water front not affected by this ordinance; and the court will not permit a person's business to be destroyed or interferred with just to gratify æsthetic sensibilities. See the case of *Byrne* v. *Maryland Realty Company,* L. R. A. 1917A, 1216, and very valuable note on the law governing this point. *Fitzhugh* v. *City of Jackson,* 97 So. 190, is decisive of our contention.

The court will observe that the city of Biloxi, to justify its action in passing the ordinance, declared by it that appellant's business was a nuisance, while the record will show that none of the evidence, either for appellee or appellant, disclosed it to be a nuisance, but, on the contrary, disclosed it was not a nuisance, and the court found it was not a nuisance, and a public body cannot by ordinance declare a legitimate business arbitrarily a nuisance; and of course, if the business ever became a nuisance, the law is ample to deal with it; but the evidence clearly shows that it is not a nuisance as now operated.

*W. L. Guice,* for appellee.

The testimony will convince the court that at all times during nine months of the year, right in the heart of the city of Biloxi, within a stone's throw of the principal hotel on the beach, there was operating a packing plant or slaughter house, because the oysters were opened or slaughtered, where from fifty to one hundred men were constantly employed and, where, at all times, there were great piles of raw oysters lying out in the open, having attached to them barnacles and other parasite shell-fish which have an earlier death than the oysters, attracting great swarms of flies and giving forth such an offensive odor that it could be noticed by people several hundred feet distant. That as these oysters were opened the juices from the oysters ran down and permeated the ground and particles of the meat being chipped off by the knives of the oyster openers would lie on the ground after the shells were taken away, attracting flies and giving out an odor. That this part of the beach was not only used by large numbers of citizens of Biloxi but that it is a common heritage of the people of the entire state as well, some of whom come here for pleasure and others who come here to regain their lost or injured health and who have a right to enjoy themselves while here as well as to be surrounded by such comforts as will admit of their profitably carrying out the purposes for which they were visiting Biloxi, that is, to enjoy themselves or to improve their health. Under such circumstances, with swarms of flies detaching themselves from this oyster house and invading the neighboring hotels and resident galleries, could the court say that these people were not annoyed or injured by a thing that was troublesome or annoying and which was both noxious, offensive and irritating?

The inevitable conclusion to be arrived at from the facts in this case is that, situated as this business was

situated with reference to the surrounding neighborhood, it was in fact a nuisance and one which not only the city had a right to regulate but one whose nature placed upon the city a duty to regulate so as to remove it from that part of Biloxi, where its presence would prevent both the citizens and the visitors from utilizing to its fullest extent the beneficent advantages of climate possessed by Biloxi.

In the Fitzhugh case this ordinance would apply if a man opened a shop to sell chewing-gum, or to dispose of ice, or to sell magazines, or other literature, things which, in their very nature, could not be a disadvantage to the health or general welfare or morality or peace of the neighborhood. In the case at bar, ignoring the disagreeable features attached to this business with reference to its general situation, we are faced with a condition here which made it the absolute duty of the city to remove this business from such close proximity to such large numbers of persons as frequented this part of Biloxi. What may not be a nuisance at one place can be a nuisance at another. A bone-yard, where bones are collected, on the outskirts of a town, in a sparsely settled neighborhood, would not be a nuisance *per se*. The same bone-yard moved into the center of a town within smelling distance of hundreds of people would be a nuisance of the most distressing and dangerous kind. "Some decisions hold that if the city declare the thing a nuisance, it is a nuisance." *Bushnell* v. *C. B. & Q. R. R.. Co.*, 102 N. E. 765. Furthermore, in the construction of such ordinances it is the duty of the court to give great weight to the fact that same were deemed necessary by the governmental authorities and that they were passed with the view of promoting the general welfare of the municipality governed. The courts will not search out the particular conduct of any one business and endeavor to find something wrong, or some illegal power exercised by such ordinance but will give it reasonable construction

136 Miss.—35.

and if any elements of necessity are shown for its passage will uphold it. While we know that the court has held in the Fitzhugh case that the supreme court of the United States had upheld the constitutionality, in so far as the Constitution of the United States was concerned, of even zoning ordinances, we want to incorporate here two of the recent cases decided by the supreme court of the United States, deciding questions very much like the question at bar. These decisions are *Reinman* v. *City of Little Rock*, 237 U. S. 171, 235 Sup. Ct. Rep. 511; *Hadacheck* v. *Sebastian*, 239 U. S. 394, 36 Sup. Ct. Rep. 143.

In this state, as in all other states of the union, urban life is constantly increasing and in this state, as in other states, there must be found in our present organic laws, as well as in the power given by the statute to our municipalities, some right on the part of the municipal authorities to protect its citizens and its visitors from discomfort as well as disease. It certainly is within the power of the city in the exercise of its lawful police power to prevent one business from destroying a use to which miles of the beach front can be put by bringing health and pleasure and happiness to thousands of persons. And we hope that in considering this cause the court will give every reasonable construction to the validity of the ordinance and even if they believe that it was not an absolute necessity, but that it was a reasonable exercise of the police power vested in the city by the legislature of the state and not an arbitrary and unlawful attack upon the lawful business in general, that the court will sustain the ordinance.

Argued orally by *J. H. Mize*, for appellant, and *W. L. Guice*, for appellee.

Anderson, J., delivered the opinion of the court.

Appellant, Mrs. Sophie Desporte, filed her bill in the chancery court of Harrison county against appellee, city

of Biloxi, to enjoin the latter from the enforcement of a certain nuisance ordinance adopted by it, affecting the wholesale oyster business of appellant and others similarly situated. There was a trial on bill, answer, and proofs, and a final decree rendered, dismissing appellant's bill, from which she prosecutes this appeal.

In substance the ordinance in question prohibits wholesale oyster shops within a certain area in the city of Biloxi, fixed by said ordinance, "wherein oysters are opened and the shells piled within or without the building thereof." The chancellor who tried the case in a very able and lucid opinion set out his finding of facts as well as his conclusion of law. The chancellor found, and he was justified from the evidence in so finding, that appellant's wholesale oyster business, as operated by her, did not constitute a public nuisance, but nevertheless he reached the conclusion that the ordinance could and should be sustained, under the authority of *Reinman* v. *City of Little Rock,* 237 U. S. 171, 35 Sup. Ct. 511, 59 L. Ed. 900, and *Hadacheck* v. *Sebastian,* 239 U. S. 394, 36 Sup. Ct. 143, 60 L. Ed. 348, Ann. Cas. 1917B, 927.

The authority of appellee to adopt ordinances concerning nuisances and cognate matters is contained in section 3319, Code of 1906 (section 5816, Hemingway's Code), which is in this language:

"To make regulations to secure the general health of the municipality; to prevent, remove, and abate nuisances; to regulate or prohibit the construction of privy vaults and cesspools, and to regulate or suppress those already constructed; to compel and regulate the connection of all property with sewers and drains; to suppress hog pens, slaughterhouses, and stockyards, or to regulate the same and prescribe and enforce regulations for cleaning and keeping the same in order, and the cleaning and keeping in order of warehouses, stables, alleys, yards, private ways, outhouses, and other places where offensive matter is kept or permitted to accumulate; and to compel

and regulate the removal of garbage and filth beyond the corporate limits.''

The ground on which appellee sought to justify the ordinance in question was the public health. The evidence in the case both for appellee and appellant was addressed mainly to the question whether or not the business of appellant was a public nuisance, in that it was a menace to the public health.

The validity of the ordinance depends on whether appellant's business was a public nuisance. Under *Ex parte O'Leary,* 65 Miss. 80, 3 So. 144, 7 Am. St. Rep. 640; *Comfort* v. *City of Kosciusko,* 88 Miss. 611, 41 So. 268, 9 Ann. Cas. 178; *Crittendon* v. *Town of Booneville,* 92 Miss. 277, 45 So. 723, 131 Am. St. Rep. 518; *Fitzhugh* v. *City of Jackson,* 132 Miss. 585, 97 So. 190—the business could not be prohibited as a nuisance *if in fact it was not.* It was held in the O'Leary case that a municipal ordinance prohibiting the keeping of hogs in hog pens or permitting hogs to run at large within any inclosed place in the municipality, except certain designated places, was invalid. Judge CAMPBELL, who wrote the opinion of the court, said, among other things:

''Hogs in the city of Jackson may or may not be a nuisance, and any ordinance on the subject should be framed accordingly.''

In the Comfort case the court construed section 2928 of the Code of 1892, of which section 3319, Code of 1906 (section 5816, Hemingway's Code), is a rescript. It was held in that case that under the authority given by this statute, empowering municipalities to prevent and abate nuisances and to suppress hog pens, a municipality could only prevent hogs being kept within its limits when the keeping was a nuisance; that an ordinance providing generally, as the one in that case did, that hogs should not be kept within the municipal limits without reference to whether their keeping was a nuisance or not was invalid. In the Crittendon case it was held that section 3340, Code

of 1906, conferring the power, among others, upon municipalities to regulate and suppress billiard tables and pool rooms, only authorized their prohibition when so conducted as to become a nuisance. In the Fitzhugh case the court held in short that a municipality could not make a thing a nuisance that was not in fact a nuisance.

It follows, from these views, that the principle which was the foundation of the chancellor's conclusion of law embodied in the two decisions of the supreme court of the United States, referred to by him and relied on by appellee to sustain the decree of the chancellor, does not come into play in this case. We simply hold that under our statute a municipality has no authority to prohibit any condition on the ground that it is a nuisance and inimical to the public health, unless in truth and in fact the evidence shows it is such a nuisance; that a municipality is without authority to pass an ordinance denominating a thing a nuisance, when in truth it is not a nuisance.

We therefore do not reach the question of the power of the legislature under the Constitution on this subject.

*Reversed, and judgment for appellant.*

HOLDEN, J., dissents.