DART *v.* CITY OF GULFPORT.[*]

(Division A.    June 6, 1927.    Suggestion of Error Overruled.    June 29,
1927.)

[113 So. 441.    No. 26503.]

1. CONSTITUTIONAL LAW. *City permit to erect filling station may be
     abrogated by valid restrictive ordinance.*

    Permit by city to erect filling station does not prevent the city from
      abrogating rights thereunder by valid ordinance prohibiting

erection of such a structure within certain limits embracing the lot in question.

2. CONSTITUTIONAL LAW.   *Where not necessary for case, constitutionality of statute will not be decided.*

   Constitutionality of statute will not be passed on till it becomes necessary to the decision of the case.

3. MUNICIPAL CORPORATIONS.   *Power to city to "regulate and restrict" building does not authorize it to "prohibit" filling stations (Zoning Act).*

   Power given by Zoning Act (Laws 1924, chapter 195), to a city within established districts, to "regulate and restrict" erection of buildings, does not authorize it to prohibit a filling station building (citing Words and Phrases, Second Series, "restrict").

---

*Corpus Juris-Cyc. References: Constitution Law, 12CJ, p. 780, n. 98; p. 992, n. 69, 71; p. 1012, n. 60 New; Municipal Corporations, 43CJ, p. 344, n. 80 New; Prohibit, 32Cyc, p. 595, n. 66; Regulate, 34Cyc, p. 1029, n. 31; Restrict, 34Cyc, p. 1683, n. 49, 50.

APPEAL from chancery court of Harrison county.

HON. V. A. GRIFFITH, Chancellor.

Suit from injunction by Samuel H. Dart against the city of Gulfport.   Bill dismissed, and complainant appeals.   Reversed and judgment rendered.

*Mize, Mize & Thompson,* for appellant.

The decree appealed from in this case brings into review the constitutionality of the zoning law as passed by the legislature of 1924, which, we submit, is really not open to discussion at this time; having been so well settled by the decision of this court that the law now becomes a rule of property in Mississippi.

This court in *Desporte* v. *City of Biloxi,* 100 So. 387, held invalid an ordinance which attempted to zone the city of Biloxi into certain areas and prohibiting in certain parts of the city zoned off the operation of an oyster retail business where raw oysters were opened and sold by retail and wholesale, and declined to follow *Reinman* v. *City of Little Rock,* 237 U. S. 171; and *Hadachek*

v. *Sebastian,* 239 U. S. 394; and cited with approval *Ex parte O'Leary,* 65 Miss. 80; *Comfort* v. *City of Jackson,* 88 Miss. 611; *Crittenden* v. *Booneville,* 92 Miss. 277; *Fitzhugh* v. *City of Jackson,* 132 Miss. 585, all of which cases are in point on the question involved in this case and which case as we herein cite has authority for our contention.

Before a municipality can prohibit any business, that business must be a nuisance in fact and the city authorities are without authority to say a business is a nuisance when as a matter of fact it is not. See *Quintini* v. *City of Bay St. Louis,* 64 Miss. 484; *Pieri* v. *Shieldsboro,* 42 Miss. 493; *Town of Clinton* v. *Turner,* 95 Miss. 594.

The decisions in Mississippi beginning in the Shieldsboro case in 42 Mississippi and ending with the Desporte case and going over a great period of years have become a rule of property in Mississippi as to the rights of purchasers of property and a settled principal of law upon which they have a right to rely and upon which attorneys advising prospective purchasers as to investment have a right to rely.

*Jno. L. Heiss,* for appellee.

This case brings into view the constitutionality of the zoning law as passed by the legislature of 1924. We deny, however, the contention of counsel that this court has ever declared by adjudication on facts before it that such a law is unconstitutional.

In *Desporte* v. *City of Biloxi,* 100 So. 387, the court expressly held that it did not reach the question of the power of the legislature under the Constitution on this subject. All it did hold in this case was that under section 5816, Hemingway's Code, no such authority was given a municipality.

*Fitzhugh* v. *City of Jackson,* 97 So. 190, held that a zoning ordinance did not come within the police power

of the city and expressly declined to pass upon the constitutionality of a legislative grant of such power.

The cases of *Ex parte O'Leary*, 65 Miss. 80; *Comfort* v. *City of Jackson*, 88 Miss. 611; and *Crittenden* v. *Booneville*, 92 Miss. 277, are decided upon the same point as the cases of *Desporte* v. *City of Biloxi* and *Fitzhugh* v. *City of Jackson;* that is, the want of legislative authority in declaring a thing a nuisance unless it was a nuisance in fact.

Now the legislature, as the repository of all the police power of the state, has the power to declare all things of a class a nuisance if some of them are and the tendency of all is to be a nuisance. To illustrate, in the case of *Crittenden* v. *Booneville, supra,* the court held the ordinance prohibiting pool rooms in Booneville to be void as beyond the municipal authority at that time, which authority was to regulate and suppress. Yet on this very question, the court held such a general ordinance valid because the special charter of Corinth had granted the power to prohibit pool rooms. Subsequently, by chapter 200, Laws of 1910, the legislature amended the provisions of section 3340, Code of 1906 (section 5837) and all municipalities under the code chapter have this authority.

*Quintini* v. *City of Bay St. Louis*, 64 Miss. 483, goes back into our judicial history to the time when conditions calling for zoning laws were unthought of. And while the opinion of the very able justice denounces the constitutionality of a law that would attempt to deprive an owner of the use of his land for the benefit of the public without first making due compensation to him therefor, yet clearly such observations did not become a pronouncement of law of the court upon this point for the reason that this point was not before the court and not involved in the case.

Counsel has pointed to no decision which sustains his contention of the unconstitutionality of the zoning act, or this ordinance. Section 5849, Hemingway's Code,

authorizes the establishment of fire limits within a municipality and to regulate, restrain or prohibit the erection of certain character of building therein. Section 5837, Hemingway's Code, grants authority to regulate, suppress or prohibit circuses, shows, theatres, billiard tables, pool tables, bowling alleys, etc. All of this class of laws deprive the owner of certain use of his property yet no one has questioned their constitutionality.

The idea sometimes prevails that the police power goes only to the extent of protecting the public health, the public morals, and the public safety. But this is not the extent of the police power of a state

It may well be said that two general principles lie as the basis of every right and of all law: (1) That the safety, welfare and happiness of the people is the supreme law; (2) That a condition to all rights in property is the duty to so use it as not to injure others in the lawful use of their property. Under the first maxim, the safety, welfare, and happiness of the individual as a whole is superior to that of the individual.

The character and extent of the police power of the legislature is thus stated in *State* v. *Newman Lbr. Co.,* 59 So. 923. As to the extent of the police power, see the following cases from the United States supreme court, see: *Chicago B. & Q. Co.* v. *Illinois,* 50 L. Ed. 609; *Barbier* v. *Connolly,* 23 L. Ed. 923 at 925; *Edgar A. Levy Leasing Co.* v. *Siegel,* 42 Sup. Ct. Rep. 289.

Practically all modern decisions of the supreme court of the United States and of the various states upon this subject sustain the validity of zoning laws. If it lies within the police power of the legislature, then it needs no specific constitutional grant to exercise it. These are a few of the well-considered cases that sustain this authority: *Reinman* v. *Little Rock,* 35 Sup. Ct. Rep. 513; *Hadacheck* v. *Sebastian,* 36 Sup. Ct. Rep. 143; *City of Des Moines* v. *Manhatton Oil Co.,* 23 A. L. R. 1322; *Village of Euclid, Ohio,* v. *Ambler Realty Co.,* 47 Sup. Ct. Rep. 114; *State ex rel. Civello* v. *City of New Or-*

*leans,* 97 So. 440; *State ex rel. Nat'l Oil Works of La.* v. *McShane, Mayor,* 106 So. 252.

But appellant contends that a permit having been given by the city for the construction of the building in question, this became a contract right which could not be taken from him by the subsequent passage of the ordinance in question. Such is not the law, for this permit may be cancelled by subsequent enactment and is in no sense a contract between the individual and the government. *Miss. Society of Arts & Science* v. *Musgrove,* 44 Miss. 835; *Pierce Oil Corp.* v. *City of Hope,* 39 Sup. Ct. Rep. 172; *Denver & R. G. R. Co.* v. *City and County of Denver,* 39 Sup. Ct. Rep. 450; *St. Louis Poster Adv. Co.* v. *City of St. Louis,* 39 Sup. Ct. Rep. 275.

The court will bear in mind that there is not involved in this case the question of what particular use may be made by the appellant of his land. It is true that section 3 of the ordinance does limit the use of land of this location to certain particular purposes and counsel for appellant argues that that question is in issue. But it will be seen from the bill that the sole complaint is that the city will prevent him from constructing the building in question and the carrying on of the business of a filling station.

The principles of law remain fixed and permanent while the application of these principles vary with the changing condition of civilization. The form changes but the spirit remains; the law is a living thing. What would be the proper application of police power to conditions that existed fifty years ago in Mississippi, would have no application to the same community at the present time. What would then be reasonable and proper for the welfare of the people at that time might well have no application now.

The welfare of the people is the supreme right and with respect to rights of property, every right from an absolute ownership in property down to a mere easement, is purchased and holden, subject to the restriction that it

shall be exercised so as not to injure, inconvenience or discommode others.

McGowen, J., delivered the opinion of the court.

The complainant, the appellant here, exhibited his bill in the chancery court of Harrison county against the city of Gulfport, alleging, in substance, that the city of Gulfport is operating under the chapter on municipalities of the Laws of 1908 and the amendments thereto, that the complainant owns a certain strip of land bordering on the Gulf of Mexico, thirty-two and six-tenths feet east and west, and about seventy-eight feet north and south, said property being located between Thirty-Fifth and Thirty-Sixth avenues, and that he purchased said property for the purpose and with the intention of erecting thereon a five-room stucco or brick bungalow, in which he would reside, and a filling station, which he intended to operate. He further alleged that on the 18th day of February, 1926, he obtained from the mayor and city commissioners of the city of Gulfport a building permit, No. 1478, which granted him permission to erect the buildings mentioned heretofore, for which he paid one dollar; that there was a building on the property purchased by him which he rented to a tenant; that immediately after obtaining the building permit he proceeded to notify his tenant to terminate his tenancy, and contracted with a contractor for the dismantling and removal of said building in order to proceed with the erection of the bungalow and filling station; that he was proceeding with the aforesaid preliminary work when the mayor and commissioners of the city of Gulfport passed an ordinance, about the 25th day of February, 1926, which provided that no building to be used as a filling station such as was authorized by the aforesaid permit should be erected on any lot or piece of ground within certain limits in said city, which said territory embraced complainant's property. He alleged that by virtue of his permit he had a vested right

to erect the aforesaid buildings; that the bungalow and filling station were not nuisances, nor would the operation of· the filling station be a nuisance.  Complainant averred that the ordinance was absolutely null and void, but that if he undertook to erect the buildings covered by his permit, that he would be charged with crime, and would be hampered in the carrying on of a legitimate and lawful business.  He alleged that he relied on the permit, and that the law thereafter passed impaired his contract with the city; that by the ordinance the city confiscated his property for public use without first duly compensating him therefor; and that the city ordinance was in violation of the Constitution of the state of Mississippi. He further alleged that there was no constitutional power in the city to pass such an ordinance; that it impaired his property rights and deprived him of the enjoyment of his property peacefully and lawfully.

And complainant prayed for a temporary injunction enjoining the city from proceeding to enforce the ordinance by arresting him, and from interfering with him in the erection of the bungalow, or the erection and operation of the filling station, and prayed that the ordinance be declared null and void, and that the city of Gulfport, its mayor and commissioners, be perpetually enjoined from arresting complainant, or in any way interfering with him in the erection of the said buildings or in the operation of the filling station.

The ordinance in question was made an exhibit to the bill, and its material part is here set out:

"Be it ordained·by the mayor and board of commissioners of the city of Gulfport, Mississippi:

"Section 1.  That it shall be unlawful to construct ór cause to be constructed any filling station, or any building or structure to be used for any trade, industry or commerce, or to conduct any trade, industry or commerce in any building or structure, on any lot or piece of ground situated on Fifteenth street and East Beach street, from Twentieth avenue to the east boundary of ·

said city and on West Beach street from Thirtieth avenue to the west boundary of said city.

"Sec. 2. That it shall be unlawful to construct or cause to be constructed, any filling station, or any building or structure for the use of trade, industry or commerce, or to carry on such trade, business or commerce, upon any lot or piece of ground situated and lying south of East and West Beach streets within the corporate limits of said city.

"Sec. 3. That it shall be unlawful to construct any building or structure upon any lot or piece of ground situated south of the East and West Beach streets within the corporate limits of said city, other than those of the following character, to-wit, open pavilions or structures, such as are suitable for park or playground purposes; plans of which must be submitted to the mayor and board of commissioners of the city not less than seven days before same are constructed.

"Sec. 4. Should any section, clause or provision of this ordinance be declared by the court to be invalid, the same shall not affect the validity of the ordinance as a whole or any part thereof, other than the part so declared to be invalid.

"Sec. 5. Any person who violates any provision of this ordinance shall be fined not less than ten dollars or more than one hundred dollars, or thirty days' imprisonment, or both such fines and imprisonment. Each day that a violation is permitted to exist shall constitute a separate offense.

"Any building or structure erected, or land or premises used in violation of any provision of this ordinance or the requirements thereof, is hereby declared to be a common nuisance and such common nuisance may be abated in such a manner as nuisances are now, or may hereafter be abated under existing law.

"Sec. 6. That a public hearing on this ordinance be had at the regular meeting of the mayor and board of commissioners of the city to be held on the 18th day of

March, 1926, and the clerk is hereby directed to give fifteen days' notice thereof by the publication of this ordinance in the Daily Herald, the official paper of said city.

"Sec. 7.  That this ordinance take effect from and after the public hearing herein provided as required by law.

"Approved by the board of city commissioners of Gulfport, February 25, 1926."

The city through its attorney filed its answer, in which it admitted that Dart owned the property in question, situated between what is known as the Beach road, or street, and the water's edge on the Gulf, and that he had a building thereon, but denied that he had contracted for the removal of same, and denied that it ought to be prohibited from enforcing its ordinance because of any action of Dart in making the contract.  They admitted the passage of the ordinance, and claimed that the ordinance was passed in pursuance of and by virtue of the authority vested in them by chapter 195 of the Laws of 1924, and stated that they complied with the law in all respects in submitting and passing the ordinance.  It admitted that it issued the permit, admitted that it had canceled and rescinded the contract, but claimed that it had offered to return the one dollar paid for the permit; denied that the complainant had any vested right to construct said buildings on the property aforesaid, and asserted that the filling station, if built, would constitute a nuisance, both in fact and in law; denied that it had deprived the complainant of the use of his property without due compensation therefor; and denied that it had done anything which would legally affect the value of his property.

The defendant further answered that it had notified the complainant, at the time the permit was granted, that the ordinance was in course of preparation, and that he would not be permitted finally to erect his filling station and bungalow within the proposed area because same would be immediately prohibited by ordinance of the city.  It alleged further that this area within which the

complainant proposed to construct his buildings borders upon the beach front of said city; that the zone is south of a road which is a part of what is known as the "Old Spanish Trail," and is a part of the state and Federal highway; that the streets therein have a traveling surface of only eighteen feet in width, and a total not exceeding forty feet; and that the travel from all the Coast towns, and the passing of tourists *to* and *fro,* makes it the most constantly used and congested thoroughfare in the city; that because of the constant travel over said streets, and the narrow width of same, it is dangerous, especially so during the night, for the public to travel along these streets; that at the time the ordinance was passed there were no residences or places of business, with but few exceptions, on the south side of said streets; that the placing of filling stations or other places of trade, industry, or commerce, or the carrying on of such business along and upon said prohibited territory, would greatly add to, embarrass, and render dangerous public travel. It stated further, that at the point where complainant seeks to erect his filling station it is particularly dangerous and unsafe to the public welfare, for the reason that the city public park is located adjacent to and joining on the north side of Beach street and has its entrance on said street, and that to construct a filling station at that point would burden the street with congested automobile travel, especially at night and during the summer months, to and from the park, when it becomes necessary for drivers of automobiles to park their cars in large numbers outside of said park grounds. It alleged that there are other places at which filling stations could be erected; alleged that the blowing of horns and the lights from cars at night, would destroy the comfort and quiet of the occupants of homes adjacent to and on the other side of the street from complainant's business. It alleged that it is a growing city; that it is absolutely necessary to zone the territory so that the greatest good may go to the

greatest number; that they are in process of passing zoning ordinances other than the one complained of here.

We think it might be said that the proof showed that the complainant had paid four thousand dollars for this little strip of land to the east of the Beach road, and running down to the water's edge; that the mayor of the city said that it was true that the city authorities desired to beautify its breach front, but stated that they took in consideration the danger to the traveling public in prohibiting the erection of any kind of buildings save playgrounds and pavilions. The proof shows that this Coast road is burdened with heavy travel—tourists and people going from one Coast town to another—and that there are filling stations within the residential district, permitted by the city. The proof shows that there are other streets running parallel through the town, or a large part of it; that complainant had bought this property for the avowed purpose of replacing an old building with a new bungalow, and a filling station in which he expects to operate a lawful business for profit.

The court below declined to grant the injunction, and dismissed the bill, having denied complainant any relief, and the complainant in the court below prosecutes this appeal here.

Complainant presents to this court two reasons why the case should be reversed:

1. It is vaguely insisted inferentially in the pleadings and arguments that the permit constituted a contract, and that the passage of the ordinance subsequent to the granting to him of the permit to erect a filling station and dwelling was an impairment of his rights. It has long been held that a municipality could not by the granting of a permit barter its right to enact laws for the public welfare; and the granting of a permit to do a thing which afterwards becomes, in the judgment of the legislative body, harmful to the body politic, is annulled by the subsequent passing of a law prohibiting the thing theretofore granted. The permit granted in this case did not

147 Miss.—35.

estop or bind the city of Gulfport, but the passage of the ordinance, if valid, abrogated his rights under the permit, under the facts of this case.

SIMRALL, J., speaking for the court, in *Mississippi Society, etc.,* v. *Musgrove,* 44 Miss. 820, 7 Am. Rep. 723, states the rule clearly:

"It was settled in the case of *Dartmouth College* v. *Woodward,* 4 Wheat, 518, 4 L. Ed. 629, that the 'contract' which a state may not impair, may as well be contained in a charter granted by itself, or by the proper authority, during the colonial period as the private agreements of individuals with one another. As yet the judiciary have not been able to define any definite rule by which legislation impugned as conflicting with the constitutional prohibition, may be tested. It may be impossible to do so. The Constitution on this subject ought, in many cases, to be read and considered in connection with an ancient principle of the common law, which is thus stated, *Brewster* v. *Kitchen,* in 1698, reported in 1 Salk: 'If A. covenants not to do an act or thing, which was lawful to do, and an act of Parliament comes in after, and compels him to do it, the statute repeals the covenant. So if A. covenants to do a thing which is lawful, and an act of Parliament comes in, and hinders him from doing it, the covenant is repealed.' It would be safe to say that all legislation which has the effect of impairing the contract, is not obnoxious to the constitutional prohibition. If the operation of the statute be but incidentally to impair the contract, when it is passed with reference to a totally different subject, altogether *diverso intuitu* it may be upheld. To illustrate, if a contract should be made to erect a wooden structure, in a densely populated city, and a statute should come in, and forbid the building of such a house, it would be a case where the covenant would be discharged; this, by the policy of the law, would be to guard against conflagration by fire, and would manifest-

ly be for the good policy of the town. Yet incidentally, it destroyed the obligation of the contract.

"So, too, if a contract were made to build a house upon a certain spot of ground, and afterwards the legislature or competent municipal authority should lay out a public road over the ground, here the public convenience must yield or this contract be annulled."

2. Counsel for appellant contends that the ordinance is void because chapter 195 of the Laws of 1924, known as the "zoning" law, is unconstitutional and void, and relies especially on the cases of *Quintini* v. *City of Bay St. Louis,* 64 Miss. 483, 1 So. 625, 60 Am. Rep. 62; *Fitzhugh* v. *City of Jackson,* 132 Miss. 685, 97 So. 190, 33 A. L. R. 279; *Crittenden* v. *Town of Booneville,* 92 Miss. 277, 45 So. 723, 131 Am. St. Rep. 518; *Comfort* v. *City of Kosciusko,* 88 Miss. 611, 41 So. 268, 9 Ann. Cas. 178; *Ex parte O'Leary,* 65 Miss. 80, 3 So. 144, 7 Am. St. Rep. 640.

The rule of this court is not to pass upon the constitutionality of a statute until it becomes necessary to the decision of a case. And while the question is interesting in the light of the past pronouncements of this court as compared with the recent announcements of the supreme court of the United States, yet, at the same time, we forbear here to enter into the merits or demerits of counsel for appellant's contention, for the reason that we do not believe the legislative authority under which the city of Gulfport assumed to act confers upon it or any other municipality in Mississippi the power to absolutely prohibit the erection of a filling station and dwelling house by the owner of the property upon land which he owns in fee. And although the question is not raised in their brief, it is so clear to our minds that it is unnecessary for us to pass upon the constitutionality of the Zoning Act, because the authority is not granted to prohibit the erection of buildings; but the strongest language used in the statute conferring zoning power upon the various boards of municipalities of certain population within the

state is to regulate and restrict within given zones named by the governing body the erection of certain kinds of buildings. The power to restrict is not the power to destroy; the power to restrict is not the power to prohibit.

In the ordinance in question, and in the answer, the city concedes that the commissioners and governing board of the city of Gulfport assumed to prohibit the erection of buildings and the carrying on of trade and commerce therein, for the purposes which normally and naturally such buildings may be used, and which, so far as this record shows, were proposed to be used for the carrying on of a perfectly valid business, not shown to be a nuisance.

We set forth *in extenso* the title and sections 1, 2, and 3 of the "Zoning" Act, as follows:

"A standard state zoning enabling act authorizing municipalities to promote health, safety, morals and general welfare of such communities, by enabling them to divide such communities into segregated and regulated zones, and for other purposes.

"Section 1. Be it enacted by the legislature of the state of Mississippi: *Grant of Power.*—For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of any municipality of over five thousand inhabitants is hereby empowered to regulate the height, number of stories, and sizes of buildings and other structures; the percentage of lot that may be occupied; the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land, for trade, industry, residence, or other purposes, and shall for playgrounds and public parks, possess the power, wherein requisite of eminent domain and the right thereto to apply public money, and therefor may issue bonds as by law otherwise permitted.

"Sec. 2. *Districts.*—For any and all of said purposes, the municipal body may divide the municipality into districts of such number, shape and area as may be deemed

best suited to carry out the purposes of this act; and within such districts *it may regulate and restrict* [italics ours] the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations on one district may differ from those in other districts. The said municipalities may impose such terms as deemed requisite when new subdivisions are laid out before allowing dedication and may receive easements in any land affected hereunder whereby this act may be made effective.

"Sec. 3.  *Purposes in View.*—Such regulations shall be made in accordance with a comprehensive plan, and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to provide adequate light and air; to prevent the over-crowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings, and encouraging the most appropriate use of land throughout such municipality."

Section 4 of the act relates to the method of procedure; section 5 is in relation to changes; section 6 relates to the engineering department; section 7 relates to the remedy of the municipality to the enforcement of its ordinances; section 8 relates to conflict with other laws; and section 9 provides that:

"The sections and portions of sections are not interdependent and the unconstitutionality of one shall not in any wise affect the remainder."

Section 10 puts the act in force upon its approval.

The power delegated by the legislature is to regulate and restrict. We have before remarked that the power

to restrict does not mean to destroy or prohibit. The words "to regulate and restrict" do not grant the power to prohibit. Volume 4 of Words and Phrases, Second Series, p. 364, gives us the following definition of "restrict:" "To 'restrict' is to restrain within bounds; to limit; to confine. *Mumford* v. *Chicago, R. I. & P. R. Co.,* 128 Iowa, 685, 104 N. W. 1135, 1138 (citing Webster Dict. Unal. tit. 'Restrict'), and all authorities there cited."

For the reason that the ordinance directly, specifically, and admittedly undertakes to prohibit the erection of buildings to be used in the carrying on of a lawful business within a proposed area, it is invalid, and cannot be upheld, simply because the legislature did not grant to the city of Gulfport, nor to any other municipality, by virtue of chapter 195 of the Laws of 1924, the power to prohibit the erection of the class of buildings therein described; the power granted was to regulate and restrict, which, in our opinion, cannot be distorted into meaning the power to prohibit.

The serious question as to the constitutionality of the Zoning Act we decline to pass upon at this time, because the case, as above indicated, is disposed of here without a review of the authorities in this state and elsewhere, as to the constitutionality of this Zoning Act.

Municipal authorities should bear in mind that there are different limitations in different Constitutions of the various states, and that when they undertake to exercise the authority granted by the legislature they are dealing with a most grave and delicate question, and should confine themselves to the authority expressly granted by the legislature.

In the instant case the ordinance is invalid and void, because it exceeds the power granted by the act in question; and the complainant was entitled to the relief prayed for in this bill.

*Reversed, and decree here for appellant.*