## ALEXANDER *v.* GRAVES, JUSTICE OF PEACE.

(In Banc. March 22, 1937. Suggestion of Error Overruled April 19, 1937.)

[173 So. 417. No. 32628.]

W. D. Conn, Jr., of Jackson, for appellant.

Wm. H. Maynard, Assistant Attorney-General, and Alexander & Satterfield, of Jackson, for appellee.

Argued orally by **W. D. Conn, Jr.**, for appellant, and by **John C. Satterfield**, for appellee.

**Ethridge, J.**, delivered the opinion of the court.

The appellant filed a petition in the circuit court of Hinds county, praying for a writ of prohibition against C. L. Graves, justice of the peace, restraining enforcement of an ordinance adopted by the board of supervisors of Hinds county, creating a zone in a residential section adjoining the city of Jackson on the north, and prohibiting the sale of beer within the said zoned territory. The order of the board of supervisors provided "that the board finds that the property hereinafter described is a residential section adjoining the city of Jackson, and it will promote the public health, morals and

safety for the hereinafter described territory to be zoned against the sale of beer and wine, so as to prohibit the sale of the same within said territory. It is therefore ordered that there is hereby zoned against the sale of beer and wine, and the sale of beer and wine is hereby prohibited at all times in the following described territory lying in the first district of Hinds county, Mississippi, to-wit: (describing the territory). This action is by virtue of authority conferred by chapter 171, Laws of 1934.''

The petitioner averred that he was engaged in business in the said territory, and that he had secured, prior to the passing of the zoning ordinance, a license to sell beer in said county; and that by chapter 171, Laws of 1934, the sale of beer and wine was legalized by the Legislature, and that the sale of beer constitutes the principal part of the business of the petitioner. He alleged, in general terms, ''that said ordinance is unreasonable, arbitrary, oppressive and confiscatory and that its enforcement would have the effect of destroying his business and deprive him of his property without due process of law if he should undertake to comply with same; or, if he should continue the sale of beer, as he is authorized to do under the laws of Mississippi, he would be subjected to multitudinous vexations and oppressive prosecutions; and that the said ordinance stands as a vexatious menace to his personal liberty and the destruction of his property rights, all without due process of law and contrary to provisions of section 14 of the Mississippi Constitution.'' He further averred that he had no plain, adequate remedy at law.

The petition was demurred to, the demurrer sustained by the circuit court, and an appeal was granted, with a stay of proceedings, or a prohibition, pending appeal. It will be observed from the statement of the petition that no facts are specified, showing that the ordinance was unreasonable if it was within the power of the board of supervisors to enact it. Chapter 171 of the Laws of

Mississippi of 1934, and section 1, provide "that it shall hereafter, subject to the provisions hereinafter set forth, be lawful in this state to transport, store, sell, distribute, possess, receive, and/or manufacture wine and beer of an alcoholic content of not more than four per centum by weight." By section 2 it was provided "that if any county, at an election held for the purpose under the election laws of the state, shall by a majority vote of the duly qualified electors voting in the election determine that the transportation, storage, sale, distribution, receipt, and/or manufacture of such beverages, shall not be permitted in such county, then the same shall not be permitted therein," etc.

Several of the sections dealing with the licensing, transportation, and possession are stated or provided for in the chapter. By section 16 of the chapter it is provided that "no permit shall be granted to a distributor unless the applicant therefor shall have been a resident of the state of Mississippi for at least two years." Section 17 provides that "no sale of light wine or of beer shall be made to a minor." Section 18 provides that "municipalities may enforce such proper rules and regulations for fixing zones and territories, prescribing hours of opening and of closing, and for such other measures as will promote public health, morals, and safety, as they may by ordinance provide, and the board of supervisors of any county may make such rules and regulations as to territory outside of municipalities as are herein provided for municipalities."

By section 22 of the act it is provided: "(a) It is hereby declared that it is the legislative intent that this act privileges the lawful sale and manufacture, within this state, of light wines and beer as described herein; and that the provisions of this act are severable; and if any word, clause, sentence, section, paragraph, or part of this act shall be held unconstitutional by the valid judgment or decree of any court of competent jurisdiction, the same shall not affect any of the remaining parts,

sections, paragraphs, sentences, clauses, or words of this act. (b) Provided, however, that nothing in this act shall prohibit the governing body of any municipality from designating what territory surrounding churches and schools in said municipalities, and the board of supervisors of any county from designating what territory surrounding churches and schools outside of any municipality, in which said wines and beer shall not be sold or consumed.''

It is the contention of the appellant that the power of a municipality, and of boards of supervisors outside of municipalities, under section 18 above quoted, is merely to fix regulations for the hours of opening and closing, and to provide zones for such regulations as may be enacted thereunder; and that the section does not authorize the board of supervisors to prohibit the sale of beer within such zones—that it is a mere regulation, and not prohibition that municipalities and boards of supervisors may make. The appellant relies upon Crittenden v. Booneville, 92 Miss. 277, 45 So. 723, 131 Am. St. Rep. 518; Dart v. Gulfport, 147 Miss. 534, 113 So. 441; Desporte v. Biloxi, 136 Miss. 542, 100 So. 387, and similar cases. We do not think these cases controlling, nor very persuasive on the question here involved. It is further suggested, in support of this view of paragraph (b) of section 22, that the power to prohibit is limited to territory surrounding churches and schools in the municipality, and in the territory lying outside of the municipality. We are unable to agree with this construction of the statute. In dealing with the provisions above quoted, we must bear in mind the character of business dealt with, and that it was with reference to this subject that the powers given by section 18, and by paragraph (b) of section 22, were conferred upon municipalities and boards of supervisors. We think a study of the law, in the light of the history of the sale of beer and wine and other intoxicating liquors, will lead to a recognition of the fact that the privilege may be abused,

that the business might be inimical and highly injurious in some communities, whereas in others it might not be so considered—being so operated as not to create dangers to minors or to the other citizens. Section 18 is not entirely clear within itself, taken alone, and might be given more than one construction. But we are to take the entire act, and consider all of its parts, one with another, and try to give effect to each part of the act, so as to fulfill the intent of the Legislature. In construing statutes, the court must look to the statute itself for the legislative intent—it cannot make laws by judicial construction. Abbott v. State, 106 Miss. 340, 63 So. 667; Holly Springs v. Marshall, 104 Miss. 752, 61 So. 703; Prather v. Googe, 108 Miss. 670, 67 So. 156. In construing statutes, the court desires to reach a conclusion in harmony with the intent and purpose of the Legislature, and if the Legislature acts within constitutional limits, the court will give effect to its statutes according to the terms and intendment of the Legislature, ascertained according to recognized rules of statutory construction. Maris v. Lindsey, 124 Miss. 742, 87 So. 13. Where the meaning of a statute is not plain, resort must be had to the real purpose and intention of the Legislature in adopting it, which, when ascertained should be given effect by the court. Gunter v. Jackson, 130 Miss. 637, 94 So. 844. In the construction of statutes, the controlling purpose is to ascertain and give effect to the intention and purpose of the Legislature, and this intention and purpose is to be deduced from the whole and every part of the statute taken together—from the words and context—and such a construction adopted as will best effectuate the intention of the lawgiver. Roseberry v. Norsworthy, 135 Miss. 845, 100 So. 514. Where a statute is obscure, the court, in construing it, must ascertain the conditions at the time of its enactment, the evil to be avoided, and the necessary effect produced by the statute. Hamner v. Yazoo Delta Lbr. Co., 100 Miss.

349, 56 So. 466. See, also, authorities cited in Mississippi and Southern Dig., Statutes, key No. 181-185.

Prior to the enactment of chapter 171 above referred to, the state had outlawed the sale of all liquors, including beer and wine, containing in excess of 1.5 per cent of alcohol. See Laws of 1908, cc. 113-117, pp. 112-120. The Legislature was departing from the policy of total prohibition to a limited sale of intoxicating liquors. They were aware of the history of legislation in reference to the sale and possession of intoxicating liquors dating back many years. It was recognized that there might be portions of the territory within the county where the sale of beer and wine might be hurtful to morals and to the safety of the community. They recognized that a vote of the entire county might authorize the sale of beer and light wines in the county, or that a majority might prohibit it; but they also recognized that in some parts of a county favorable to the sale as a whole, there might be zones where it would be hurtful and injurious to public morals and public safety. In our opinion, it was intended to confer upon the board of supervisors in territory outside of the municipality, and upon the municipality within its territory, the power to fix zones in which the sale might be conducted, and other zones in which it might be prohibited. They were not dealing with a subject entirely harmless within itself. They knew that such liquors when drunk to excess produced intoxication. Fuller v. Jackson, 97 Miss. 237, 52 So. 873, 30 L. R. A. (N. S.) 1078, in which case it was held that a beverage containing in excess of 2.12 per cent of alcohol was intoxicating. They knew this to be an age in which the machine is much used—almost universally used in transporting people from point to point; and they knew that intoxicating liquors impaired both vision and judgment in the operation of such machines. The police department of the city of Jackson estimates that a large percentage of motor accidents are due to the use of intoxicating liquor; and also that it is re-

sponsible for a large percentage of crime in the municipality—a fact known to all informed people. They knew, also, that the use of intoxicants stimulates the baser passions, breaks down mental and moral resistance to temptation, and promotes immorality. They are also conversant with the fact that under modern conditions people use automobiles to go considerable distances from their place of residence and neighborhood, and that they are not as considerate of the sentiment of other communities as of their own. When section 18 of chapter 171 refers to fixing zones and territories, it has in mind zones and territories for or against the sale of intoxicating liquors. A zone, within itself, connotes a fixed territory; but in order to make it more certain that this was its meaning, the word "territories" was added to the word "zones." These words, "for fixing zones and territories" mean to fix zones and territories in which such liquor could or could not be sold. These words are set off from the words, "prescribed hours of opening and closing," by commas, showing a separate subject-matter. It is true that punctuation counts for but little in legal construction; yet when an act is carefully punctuated, the punctuation may afford some guide to the legislative meaning. These words are followed by the more general clause, "and for such other measures as will promote public health, morals, and safety, as they may by ordinance provide." Which shows that reasonable regulation of a helpful kind may be made by the board of supervisors in territory outside of municipalities, to afford such protection. The general zoning law (Laws 1926, c. 308), which confers authority upon municipalities of 5,000 or more inhabitants to zone and restrict various kinds of business, whether harmful or not in their nature, to given territory, has been held constitutional in the case of City of Jackson v. McPherson, 162 Miss. 164, 138 So. 604, 605. The subject-matter there under consideration was a filling station, of itself a harmless and legitimate business. In considering the power

of the Legislature to deal with the subject the majority opinion, which, of course, is the law, said:

"It is therefore a consideration of supreme importance to state and nation that the home and desirable home surroundings in cities and large towns shall be preserved and made permanently secure. . . . We need not elaborate upon considerations so distinctly vital; we merely introduce this as among those in the mature view of which we have no hesitancy in declaring that those reasonable regulations which will preserve the home from intrusion and will secure its permanency is within the legitimate field of the police power of the state; and that zoning laws, such as those now in the statute books of the state, to that end, are valid."

Surely, it is as important that the safety and security of the homes of the smaller towns and rural sections shall also be matters for legislative consideration, and we think that the Legislature had in mind the securing of the peace and safety of communities wherein the necessity for regulations to that end exist in the judgment of the board of supervisors.

In the opinion in the case of City of Jackson v. McPherson, supra, the court cited Euclid, Ohio, v. Ambler Realty Co., 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016, which case sustains the constitutional power to zone territory where, in the judgment of the proper authorities, the welfare and security of a community, and its peace and happiness, will be promoted thereby.

It is argued that paragraph (b) of section 22 gives the exclusive power to the boards of supervisors and to municipalities to prohibit the sale of beer and wine. Surely it was not the purpose of the Legislature to permit a person actuated solely by the spirit of gain to establish a beer saloon in any community, whether within the municipality, or outside of the police district, and to limit the city merely to the fixing of regulations for the hours of opening and closing thereof. Surely it was

intended that the municipality could bar a business which in its very nature might be hurtful to the peace, quiet, and safety of a particular portion of the municipality. Surely, also, it was intended that the county authorities were to have power to fix the territory, as well as the hours of opening and closing, and other necessary police regulations—certainly that must have been in the minds of those enacting the statute.

In regard to the powers conferred by section 18, they must be based upon reasonable conditions—some basis of fact ascertained by the board which would have a material bearing upon whether the sale of such liquors should be by a resident of the state for a period of two years, omitting any requirement that the applicant shall be a person of good moral character—a requirement which ran through our law for many years prior to the enactment of total prohibition in 1908. For instance, it was provided in section 2459 of the Revised Code of 1871 that, ''No license shall be granted to any person to retail vinous or spirituous liquors . . . unless the applicant shall first produce a petition for the issuance of such license, recommending the said applicant to be of good reputation, and a sober and suitable person to receive such license, which petition shall be signed by a majority of the legal voters resident in the supervisor's district, where the liquors are intended to be sold,'' etc. This requirement ran through all subsequent laws authorizing the sale of intoxicating liquors, until the present enactment. It will be noted from the case before us that the zoning of the territory in which the sale was prohibited was here in a residential section contiguous to the largest city in the state, and upon a much traveled highway. While this fact is not controlling, yet it is very desirable, in thickly settled territories within easy reach of large populations, and without police protection, that such zones be created if, in fact, any necessity therefor exists. And we think that we must accept the finding of the board of supervisors as justified by the facts

where the petition does not set forth specific facts, but merely general conclusions.

In deciding this case, we recognize the fact that the Legislature has the constitutional power either to prohibit or permit the sale of intoxicating liquors, and that it is the judge as to the conditions upon which they base their action. Our past history shows that the Legislature has frequently provided for the segregation of particular territory for prohibition, where sales were permitted in other places. Businesses of the kind here treated of are peculiarly such as need police supervision. The legislative will must prevail, and no personal opinion can obstruct it within its constitutional limits.

We think the language we have quoted from the statute clearly indicates the legislative will, especially when considered in connection with the public policy of the state as evidenced for many years in dealing with this subject. The circuit judge having held in accordance with these issues, the judgment is affirmed.

Affirmed.

**Smith, C. J.**, did not participate in the decision of this case.

DISSENTING OPINION.

**Anderson, J.**, delivered a dissenting opinion.

The question is whether the ordinance was authorized by section 18, and paragraph (b) of section 22 of the act. Section 18 empowers municipalities and counties to make and enforce rules and regulations "for fixing zones and territories, prescribing hours of opening and of closing, and for such other measures as will promote public health, morals, and safety." And paragraph (b) of section 22 gives them the power to designate territory surrounding churches and schools in which wines and beer "shall not be sold or consumed."

The ground for the adoption of the ordinance involved was that the territory is a residential section, and the public health, morals, and safety would thereby be promoted. In other words, that the public health, morals, and safety would be promoted because it is a residential section.

There is no authority in the statute, either expressed or implied, to prohibit the sale of beer and wines in any territory because such territory is residential. The only authority to absolutely prohibit their sale is contained in the latter part of paragraph (b) of section 22, and that is in territory "surrounding churches and schools." There are no churches and schools involved here—it is a residential section alone.

The ordinance makes no attempt to regulate—it is simply a prohibition ordinance. The power to zone is a power to regulate, not prohibit, and that is true of the power to suppress. Ex parte O'Leary, 65 Miss. 80, 3 So. 144, 7 Am. St. Rep. 640; Comfort v. Kosciusko, 88 Miss. 611, 41 So. 268, 9 Ann. Cas. 178; Crittenden v. Booneville, 92 Miss. 277, 45 So. 723, 725, 131 Am. St. Rep. 518; Fitzhugh v. City of Jackson, 132 Miss. 585, 97 So. 190, 33 A. L. R. 279; Desporte v. Biloxi, 136 Miss. 542, 100 So. 387; Dart v. Gulfport, 147 Miss. 534, 113 So. 441, 445.

In the Crittenden case the statute involved gave the power to municipalities to "regulate, suppress and license" pool rooms. Crittenden was operating a licensed pool room. The municipality passed an ordinance prohibiting their operation. The court held the ordinance void upon the ground that the power to regulate and suppress did not carry with it the power to prohibit. In the Comfort case the court held that the power to suppress hog-pens in municipalities did not carry with it the power to prohibit by a general ordinance. In the Fitzhugh case the court held void an ordinance of the city of Jackson prohibiting business houses in residential sections of the municipality. It was an ordinance, not

to regulate, but to prohibit. Regulation is permissible; City of Jackson v. McPherson, 162 Miss. 164, 138 So. 604; while prohibition is without the police power. In the Dart case the ordinance prohibited filling stations in certain territory in Gulfport. The statute, chapter 195, Laws of 1924, under which the ordinance was sought to be justified, empowered the municipality to regulate and restrict the erection of filling stations. The court held that the power to regulate and restrict "cannot be distorted into meaning the power to prohibit."

According to the controlling opinion, the board of supervisors and municipal authorities of a county together could zone the whole county into a residential section, and prohibit the sale of beer and wines therein, and thereby repeal chapter 171 of the Laws of 1934, without an election, as therein provided. The majority opinion is a good temperance lecture, and might be good legislation, but it ought not to be declared the law now— a harmful precedent for the future is the trouble with it.

**Griffith, J.**, joins in this dissent.