# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1998-CT-01278-SCT

*BILLY DANIEL HARRISON, JR.*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/1998 |
| TRIAL JUDGE: | HON. MIKE SMITH |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN H. OTT |
| | GUS GRABLE SERMOS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | DUNNICA O. LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/06/2001 |
| MOTION FOR REHEARING FILED: | 10/5/2001; denied 12/13/2001 |
| MANDATE ISSUED: | 12/20/2001 |

**EN BANC.**

**BANKS, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Billy Daniel Harrison, Jr., was convicted for possession of a controlled substance. An equally divided Court of Appeals upheld the conviction finding that the trial court did not err in (1) finding probable cause for the stop of Harrison's vehicle, (2) admitting evidence that marijuana was found in his vehicle, (3) admitting evidence of a prior drug transaction, (4) admission of hearsay evidence, and (5) admitting opinion testimony. *Harrison v. State*, No. 1998-KA-01278-COA (Miss. Ct. App. 2000). We granted certiorari solely to confront a matter of statutory interpretation of first impression, that is, whether the specific provisions of Miss. Code Ann. § 63-3-516 (Supp. 2000) control over the more general speeding statutes. We conclude that the specific provision of § 63-3-516 prevails over the general speeding statutes. We hold, however, that because the deputies had a reasonable basis for their belief that Harrison committed a moving violation by speeding through a construction zone, there was probable cause to stop Harrison. Accordingly, we affirm the judgment of the Court of Appeals and the judgment of the circuit court.

## I.

¶2. At 1:30 a.m on May 31,1998, Lincoln County Sheriff Deputies Chris Picou ("Picou") and Anthony Foster ("Foster") were monitoring traffic on Interstate 55 in Lincoln County, Mississippi. The deputies parked in a construction area watching north-bound traffic and drove a Sheriff's Department K-9 unit vehicle containing a drug-sniffing dog. The construction zone was marked with a 60 mile per hour speed limit, and there were orange barrels closing off one lane of traffic between mile markers 44 and 46.

¶3. The deputies stopped Harrison for driving 67-70 miles per hour in a 60 miles per hour construction zone after visually observing that Harrison appeared to be exceeding the 60 mile per hour speed limit. No workers were present in the area where Harrison was stopped.

¶4. After requesting Harrison's driver's license and asking a few questions of Harrison, Officer Picou discovered that Harrison rented the vehicle he was driving in Texas and was returning to Alabama after flying to Houston, Texas. After completing a driver's license check, Deputy Foster discovered that, although Harrison's license was valid, he had prior arrests for narcotic trafficking. Suspecting that drugs might be in the car, Deputy Picou asked Harrison to step out of his vehicle and away from the car.

¶5. Deputy Picou then asked Harrison whether he had any prior arrests, if he had any illegal substances in the car, and whether he would allow Deputy Foster to search the car. Deputy Picou testified that Harrison assented to the search. Deputy Foster testified that Harrison denied having previous arrests by shaking his head "no." Deputy Picou opened the rear door to the car and smelled the odor of raw marijuana emanating from the vehicle. Deputy Foster obtained Harrison's car keys to open the trunk and found 117 pounds of marijuana in a duffle bag.

¶6. In June, 1998, Harrison was indicted in the Circuit Court of Lincoln County for "willfully, unlawfully, feloniously and knowingly having in his possession more than one kilogram of marijuana, a controlled substance, with the unlawful and felonious intent to distribute said marijuana to some other person or persons unknown on or about May 31, 1998, in violation of Section 41-29-139 Miss. Code Ann. (1972), as amended." Harrison was convicted for possession with intent to distribute more than one kilogram of marijuana. The court sentenced Harrison to thirty (30) years with a $1 million fine. The Court of Appeals, in a 5-5 decision, affirmed Harrison's conviction and sentence. In a dissent joined by King, P.J., Bridges, Irving and Thomas, JJ., then Judge Diaz concluded that the deputies lacked probable cause to stop Harrison for speeding, because he had not violated the applicable speeding statutes. The Court of Appeals denied Harrison's Motion for Rehearing. This court granted his Petition for Writ of Certiorari.

## II.

### a.

¶7. In reviewing questions of law, this Court proceeds de novo. *Sykes v. State*, 757 So.2d 997, 999 (Miss. 2000) (citing *Ellis v. Anderson Tully Co.*, 727 So.2d 716, 718 (Miss.1998); *Cummings v. Benderman*, 681 So.2d 97, 100 (Miss. 1996)).

¶8. Miss. Code Ann. § 63-3-516(1) as it existed at all times pertinent to this action states in pertinent part:

> (1) It shall be unlawful for any person to operate a motor vehicle within a highway work zone at a speed in excess of the maximum speed limit specifically established for the zone **whenever workers are present and whenever the zone is indicated by appropriately placed signs displaying the reduced maximum speed limit** . . .

(emphasis supplied).

¶9. Harrison argues that § 63-3-516 requires that workers are present in order to violate the elements of that statute. He maintains, and the State concedes, that no workers were present at the time he drove through the construction zone. Thus, he contends that he was not in violation of the applicable statute and

the deputies lacked probable cause to stop his vehicle for speeding.

¶10. In contrast, the Court of Appeals opined, based upon its reading of Miss. Code Ann. §§ 63-3-313, 63-3-133, 65-1-71, and 65-1-8, that the posted sixty mile per hour limit in the construction zone controlled at all times of day, regardless of the presence of workers. Section 63-3-313 provides: "No driver shall disobey the instructions of any official traffic-control device placed in accordance with the provisions of this chapter, unless at the time otherwise directed by a police officer." Miss. Code Ann. § 63-3-313 (1996). Section 63-3-133 defines "traffic control device" as "all signs, signals, . . . placed or erected . . . for the purpose of regulating, warning, or guiding traffic. Miss. Code Ann. § 63-3-133 (1996). Section 65-1-71 authorizes the Director of the Mississippi Department of Transportation to close highways for construction and set up detours when necessary. Miss. Code Ann. § 65-1-71 (1996). Lastly, § 65-1-8 gives the Mississippi Department of Transportation the power "to make and publish rules, and regulations and ordinances for the control of and the policing of the traffic on the state highways . . ." the violation of which constitutes a misdemeanor. Miss. Code Ann. § 65-1-8 (Supp. 1999).

¶11. The Court of Appeals plurality held that § 63-3-516 only partly covers all speeding violations that could occur in a construction zone. It asserted that the 1997 enactment of § 63-3-516 should not be construed to repeal by implication that portion of the general speeding statutes which would otherwise require that drivers obey posted reduced speed signs in construction zones. Therefore, it concluded, the general statute regulating speed limits, still applies to enforce a 60 mph speed limit in the construction zone at all times day and the specific construction zone statute is an enhancement statute.

¶12. It is well-settled law in Mississippi that when a statute is plain and ambiguous there is no room for construction. Only when a statute is unclear or unambiguous should we look beyond the language of the statute in determining the Legislature's intent. *Kerr-McGee Chem. Corp. v. Buelow*, 670 So.2d 12, 17 (Miss. 1995); *Allred v. Webb*, 641 So.2d 1218, 1222 (Miss. 1994); *Clark v. State ex rel. Miss. State Med. Ass'n*, 381 So.2d 1046, 1048 (Miss. 1980). Moreover, this Court in *State v. Traylor*, 100 Miss. 544, 551, 56 So. 521, 523 (1911), outlined the construction of statutes when presented for judicial interpretation: "The court has no right to add anything to or take anything from a statute, where the meaning of the statute is clear . . . .The law is that criminal statutes must be strictly construed. Such has been the law from time immemorial."

¶13. The statute, § 63-3-516, requires two criteria in order to be applicable: (1) workers must be present and (2) signs indicating the reduced maximum speed limit must be appropriately displayed. Here, even though the signs were displayed, the evidence is uncontroverted that no workers were present in the highway construction zone at 1:30 a.m. when Harrison was stopped for speeding. The language in this statute conveys a clear and definite meaning of when a violation is applicable. This Court will not resort to the rules of statutory interpretation and expand or restrict the plain meaning of the statute. We must apply this statute as it is written.

¶14. This Court has also recognized that in resolving the conflict of specific versus general statutory provisions: "To the extent that two constitutional or statutory provisions overlap or conflict, specific provisions control over general provisions." *Yarbrough v. Camphor*, 645 So.2d 867, 872 (Miss. 1994) (citing *McCrory v. State*, 210 So.2d 877, 877-78 (Miss. 1968); *Lenoir v. Madison County,* 641 So.2d 1124, 1128 (Miss. 1994)). Further, this Court has directed that when interpreting different sections of the Code involving the same subject matter:

The controlling rule of construction dispositive of this case is that each section of the Code dealing with the same or similar subject matter must be read in pari materia and to the extent possible each section of the code must be given effect so that the legislative intent can be determined.

*Yarbrough*, 645 So.2d at 870 (citing *Miss. Pub. Serv. Comm'n v. Municipal Energy Agency of Miss.,* 463 So.2d 1056, 1058 (Miss. 1985)).

¶15. Miss. Code Ann. § 63-3-516, is more specific than any of the other applicable general statutes regarding speed limit in construction zones since it specifically allows for a lower speed limit when two criteria are met: (1) workers being present and (2) appropriately placed signs.[1] The Court of Appeals, basing its analysis on *McCrory* and its progeny, is correct in noting that the specific statutory provision governing construction zones control over the general duty to follow posted speed limit signs.

¶16. The Court of Appeals, in essence, argues that § 63-3-516 is confined to the general statute and serves as a specific enhancement statute when a driver speeds in a construction work zone and workers are present. Thus, the general statute must apply at all times when the "occupied work zone" statute does not apply. The Court of Appeals reads something into Miss. Code Ann. § 63-3-516 that the statute does not state or indicate. The statute reads "Speed Limits within Highway Work Zones" and does not refer to its "enhancement" of a general speeding statute. Unlike other enhancement statutes, this section does not impose or allow for the implication of higher fines or sentences. On the contrary, the statute limits the maximum fine to $250.00.

¶17. The Legislature has chosen to establish a specific statute for speeding violations occurring within construction zones. In accordance with that statute in order for a speeding violation to occur workers must be present and there must be appropriately placed signs. There were no workers present when Harrison drove through the construction zone, thus, the construction speed limit was not in effect. Harrison neither violated the construction zone speeding statute, nor the general seventy mile per hour posted speed limit, because he was going between 67-70 mph. It follows that evidence derived from the stop would be subject to suppression if the inquiry stopped there. It does not stop there, however, because the question of probable cause does not turn upon an ultimate finding of guilt of the offense for which one was stopped.

**b.**

¶18. The United States Supreme Court has stated that the "decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct 1769, 1772, 135 L.Ed.2d 89 (1996), *citing Delaware v. Prouse*, 440 U.S. 648, 659, 99 S.Ct. 1391, 1399, 59 L.Ed.2d 660 (1979). We have held that the test for probable cause in Mississippi is the totality of the circumstances. *Haddox v. State*, 636 So.2d 1229, 1235 (Miss.1994). This Court has further defined probable cause as:

> a practical, nontechnical concept, based upon the conventional consideration of every day life on which reasonable prudent men, not legal technicians act. It arises when the facts and circumstances with an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.

*Conway v. State*, 397 So.2d 1095, 1098 (Miss.1980) (quoting *Strode v. State*, 231 So.2d 779

(Miss.1970)).

¶19. Here, the officers testified that they based their stop on the belief that Harrison was in violation of the traffic laws that made it illegal to exceed the posted speed limit, which was sixty (60) miles per hour. In essence, the stop was based on a mistake of law. In addressing the validity of probable cause in light of a mistake of law, several courts have determined that if the probable cause is based on good faith and a reasonable basis then it is valid. *See **United States v. Wallace***, 213 F.3d 1216 (9th Cir. 2000)(finding probable cause existed because of reasonable belief that suspect committed or was committing crime even though officer was mistaken that all front-window tint was illegal); ***United States v. Sanders***, 196 F.3d 910 (8th Cir. 1999)(officer objectively had reasonable basis for probable cause even though, vehicle was not technically in violation of the statute); ***DeChene v. Smallwood***, 311 S.E.2d 749 (Va. 1984)(holding arrest resulting from mistake of law should be judged by the same test as one stemming from mistake of fact; whether the arresting officer acted "in good faith and with probable cause).

¶20. In *Sanders*, Sanders was a passenger in a pick-up truck that was towing a trailer. *Sanders*, 196 F.3d at 910. An officer stopped the vehicle because one of the two taillights was missing a red lens and was emitting white light from the exposed bulb, in violation of South Dakota law. *Id.* In fact, it was not in violation of the statute because the statute was only applicable to trailers assembled after July 1, 1973, and this trailer was manufactured prior to 1973. *Id.* at 912. The court began its inquiry with whether or not the officer had an "objectively had reasonable basis for believing that the driver has breached a traffic law." The court then reasoned that even if the trailer was not technically in violation of the statute, the officer could have reasonably believed that the trailer was in violation of the statute. *Id.* Citing *Arizona v. Evans*, 514 U.S. 1, 17, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), the federal court found that the determination of whether probable cause existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time. 196 F.3d at 912. The court concluded that even if the officer was wrong, it could not say that the officer's belief was unreasonable. *Id.*

¶21. We find this analysis persuasive. In the instant case, the two deputies paced Harrison as driving between 67-70 miles per hour, which was in violation of the posted sixty (60) mile per hour speed limit. Regardless of whether there were construction workers present in the area the deputies had an objective reasonable basis for believing that Harrison violated the traffic laws of Mississippi by exceeding the speed limit. Indeed, the trial court and half of the judges of the court of appeals interpret the law to find a violation. Based on the totality of circumstances and the valid reasonable belief that Harrison was violating the traffic laws, the two deputies had probable cause to stop Harrison, even though it was based on a mistake of law. Accordingly, we find that the deputies had sufficient probable cause to stop Harrison, even in light of the mistake of law.

### III.

¶22. Because we limit our consideration on certiorari to the probable cause issue, we do not address Harrison's other contentions, and the judgment of the Court of Appeals is affirmed.

¶23. **THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED.**

**PITTMAN, C.J., McRAE, P.J., SMITH, MILLS, WALLER, COBB AND EASLEY, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**

1. This includes the aforementioned statutes - Miss. Code Ann. § § 63-3-313, 63-3-133-65-1-71, and 65-1-8 (1996) - and Mississippi's general speeding statute § 63-3-501. Section 63-3-501 reads:

> No person shall operate a vehicle on the highways of the state at a speed greater than sixty-five (65) miles per hour. The Mississippi Transportation Commission may, in its discretion, by order duly entered on its minutes, increase the speed restrictions on any portion of the Interstate Highway System provided such speed restrictions are not increased to more than seventy (70) miles per hour. The commission may likewise increase the speed limit to seventy (70) miles per hour on controlled access highways with (4) or more lanes.

Miss. Code Ann. § 63-3-501.