890 So.2d 959 (2004)
Robert COULDERY a/k/a Robert B.J. Couldery, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00494-COA.
Court of Appeals of Mississippi.
December 14, 2004.
*960 Shawna Anne Murrell, Columbia, SC, Kathryn N. Nester, Jackson, attorneys for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
EN BANC.
LEE, P.J., for the Court.

FACTS AND PROCEDURAL HISTORY
¶ 1. On July 24, 2000, Robert Couldery was returning to New York from a vacation in California. Couldery had secured a rental car bearing California tags for his return home, and was driving east on Interstate 20 between Brandon and Pelahatchie when he saw a marked Mississippi Highway Patrol car parked on the right shoulder of the interstate. Before passing the vehicle, Couldery changed from the right lane of traffic to the left lane. Trooper Brad Vincent occupied the patrol car, and after Couldery passed, Officer Vincent observed Couldery for a moment *961 as he continued to drive in the left-hand lane. Officer Vincent then pulled out from the shoulder of the interstate and began to follow Couldery. After following Couldery for about thirty seconds, Officer Vincent turned on his blue lights and pulled Couldery over for driving in the left-hand lane. Officer Vincent gathered Couldery's license and registration information and ran his license plate information through the computer. Finding no outstanding warrants on Couldery, Officer Vincent began to question him about the purpose and nature of his trip.
¶ 2. Officer Vincent then asked Couldery if he could search his vehicle. Couldery denied Officer Vincent access to the vehicle, and Officer Vincent then ordered Couldery to move his vehicle to a different location to await the arrival of a K-9 unit. With Officer Vincent still in possession of Couldery's license, Couldery followed Vincent to a gas station four or five miles away. Officer John King of the Pelahatchie Police Department K-9 Unit arrived at the gas station, spoke with Officer Vincent, and then worked his K-9 around Couldery's vehicle. The K-9 attempted to enter through the window on the driver's side, which was open. The K-9 also showed interest in the trunk area of the car.
¶ 3. Officer Vincent opened the rear car door and discovered a small bag on the back seat that contained syringes and two small bottles of what appeared to be steroids. After finding the drugs, Officers Vincent and King opened the trunk of the car in which they found two suitcases. Couldery stated that he did not have the key to one of the suitcases, so the officers pried the suitcase open with a metal bar. The opened suitcase revealed a large variety of medications, which Officer Vincent identified as steroids. The second suitcase was opened as well, and it contained clothing in addition to steroids. Couldery was then placed under arrest.
¶ 4. Couldery was convicted for violating Mississippi Code Annotated Section 41-29-139 (1972) on two counts of possession of a Schedule III controlled substance. Couldery was sentenced on Count I to twenty-four years with eighteen years suspended and on Count II to sixteen years with twelve years suspended, all in the custody of the Mississippi Department of Corrections with five years of supervised probation. It is from this conviction that Couldery now appeals, arguing seven points of error: (1) the trial court erred in denying his motion to suppress, as Couldery's seizure and detention constituted an unlawful arrest and was in violation of the United States Constitution and the Mississippi Constitution; (2) the trial court erred in denying Couldery's motion for a continuance in light of discovery violations by the State; (3) the trial court erred by denying Couldery's motion for a mistrial due to comments by the State during opening statements; (4) the trial court erred in admitting testimony regarding Couldery's statements made while he was in custody but before he was advised of his Miranda warnings; (5) the trial court erred in denying Couldery's motion for a directed verdict; (6) the trial court erred in denying Couldery's proposed jury instructions; and (7) the trial court abused its discretion in sentencing Couldery.
¶ 5. Finding that the first issue presented on appeal is dispositive of this case, this Court declines to discuss issues two through seven.

I. THE TRAFFIC STOP
¶ 6. The traffic stop was predicated on a traffic violation, namely that Couldery was driving in the left-hand lane of the roadway. There has been dispute on appeal as to which specific statute Couldery violated by driving in the left-hand lane, however *962 at a pre-trial motion to suppress, the trial judge determined that Couldery was stopped for violating Mississippi Code Annotated Section 63-3-601. On appeal, the State submits that Couldery was in violation of Mississippi Code Annotated Section 63-3-603, and additionally argues that Couldery failed to maintain a proper lookout while driving. The State's attempt to play a legal game of pin-the-tail on the charges belies a larger issue in the case, specifically whether it was constitutionally permissible for Trooper Vincent to stop Couldery.
¶ 7. The test for probable cause in Mississippi is the totality of the circumstances. Haddox v. State, 636 So.2d 1229, 1235 (Miss.1994). In Singletary v. State, 318 So.2d 873, 876 (Miss.1975), our supreme court stated that there are generally three ways which an officer may attempt to prevent crime, detect violations, make identifications, or apprehend criminals. The first method is the "voluntary conversation," during which an officer is allowed to have a voluntary communication with an individual regardless of what facts are known to the officer because it involves no force and no detention of the individual interviewed; the second method is the "investigative stop and temporary detention." The supreme court has determined that when an officer stops and temporarily detains an individual it is not an arrest, when reasonable circumstances are present an officer may stop and detain a person to settle an ambiguous situation without having sufficient knowledge to justify an arrest. Finally, an officer may make an arrest only when he/she has probable cause. Id.
¶ 8. This Court, following the Supreme Court, has treated routine traffic stops as more similar to a "Terry stop" than to a formal arrest. Millsap v. State, 767 So.2d 286, 289(¶ 8) (Miss.Ct.App.2000) (citing Ohio v. Robinette, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); Berkemer v. McCarty, 468 U.S. 420, 438, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).
¶ 9. Under Terry, the legality of a police investigatory stop is tested in two parts. First, this Court must examine if the officer's actions were justified at its inception, and then this Court must inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop. United States v. Brigham, 382 F.3d 500 (5th Cir.2004) (citing Terry, 392 U.S. at 19-20, 88 S.Ct. 1868).

a) Mississippi Code Annotated Sections 63-3-601 and 611
¶ 10. The State asserts that the stop was lawful due to Couldery's violation of Mississippi Code Annotated Section 63-3-601 (Rev.1996), which is titled, "[v]ehicles to be driven on right half of roadway; exceptions." This section of the code provides as follows:
Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:
1. When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;
2. When the right half of a roadway is closed to traffic while under construction or repair;
3. Upon a roadway divided into three marked lanes for traffic under the rules applicable thereon; or
4. Upon a roadway designated and signposted for one-way traffic.
¶ 11. This statute should be read in conjunction with Mississippi Code Annotated Section 63-3-611, which addresses *963 the exceptions to 601's requirement that traffic remain on the right side of the roadway. (See Wells Fargo Armored Service Corp. v. Turner, 543 So.2d 154, 157 (Miss.1989)). This section provides as follows:
Overtaking and passing vehicles on the left side of the roadway. (1) No vehicle shall be driven to the left side of the center of the roadway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing to be completely made without interfering with the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken. In every event the overtaking vehicle must return to the right-hand side of the roadway before coming within one hundred feet of any vehicle approaching from the opposite direction.
(2) No vehicle shall, in overtaking and passing another vehicle or at any other time, be driven to the left side of the roadway under the following conditions: a. When approaching the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed;
b. When approaching within one hundred (100) feet of any marked or readily distinguishable bridge, viaduct, or tunnel on any roadway other than a four-lane roadway;
c. When approaching within on hundred (100) feet of or traversing any marked or readily distinguishable intersection or railroad grade crossing;
d. When official signs are in place directing that traffic keep to the right, or distinctive center line is marked, which distinctive line also directs traffic as declared in the sign manual adopted by the State Transportation Commission.
Mississippi Code Annotated Section 63-3-611 (Supp.2003).
¶ 12. The Mississippi Attorney General's Office issued an opinion in October 2002 addressing sections 63-3-601 and 611. Citing Alexander v. Graves, 178 Miss. 583, 173 So. 417, 420 (1937), the opinion considered the "conditions at the time of [the statutes'] enactment, the evil to be avoided, and the necessary effect produced by the statute[s]." MS AG Op., Blakney (October 11, 2002). The Attorney General opines that "given the exclusive existence of two lane highways in the state at the time the statutes were enacted, it is apparent that the intent of the legislature was to address dangerous driving conditions on two lane highways." Id. The Attorney General further opined that driving in the left-hand lane of a four lane highway does not violate either statute. This Court is inclined to agree.
¶ 13. After a review of the cases addressing 63-3-601, this Court finds that Couldery's actions in driving in the left lane of the right half of the interstate highway did not constitute a criminal offense as contemplated in the statute. Furthermore, section 63-3-601(4) exempts roadways "designated and signposted for one-way traffic." Even if the legislature intended to include the interstate highway within the purview of section 63-3-601, the interstate highway is clearly a roadway that is designated and signposted for one-way traffic, and therefore traffic on the interstate would fall into the exception enumerated in 63-3-601(4). Accordingly, this Court finds that the traffic stop was not valid.

b) Mississippi Code Annotated Section 63-3-603
¶ 14. On appeal, the State argues that Couldery was also in violation of *964 Mississippi Code Annotated Section 63-3-603, therefore Trooper Vincent had probable cause to stop Couldery for violating that section. Section 63-3-603, entitled "Driving on roadways laned for traffic" provides in pertinent part as follows:
Whenever any roadway has been divided into three (3) or more clearly marked lanes for traffic, except through or bypassing a municipality, the following rules in addition to all others consistent herewith shall apply.
(a) A vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety....
Mississippi Code Annotated Section 63-3-603 (Rev.1996). The State urges that under Nobles v. Unruh, 198 So.2d 245, 247 (Miss.1967), and Mills v. Nichols, 467 So.2d 924, 929 (Miss.1985), Trooper Vincent had probable cause to believe that Couldery was in violation of § 63-3-603. While these cases address section 63-3-603, they are easily distinguishable from the case sub judice. Although the Mills court did discuss section 63-3-603, that case derived from an automobile accident at an intersection. In reviewing a jury instruction addressing section 63-3-603, the supreme court determined that an instruction under that section was not appropriate because the central issue in that case was whether Mills was close enough to an intersection to constitute an immediate collision hazard. The State's reliance on this case is misplaced.
¶ 15. It is true that the Nobles court determined that section 63-3-603 applies to four-lane highways. The defendant in that case was under suit for failing to ascertain that a lane of traffic was clear before he attempted to pass the vehicle preceding his. Nobles clearly addresses a driver's duty to determine that a vehicle can be moved from lane to lane with safety before actually changing lanes.
¶ 16. The State's reliance on this case is misplaced, for there is no evidence in the record that Couldery violated 63-3-603 in moving from the right-hand lane to the left-hand lane. According to Trooper Vincent, there were no other vehicles on the interstate other than Couldery and Trooper Vincent. The State adduced no evidence that Couldery changed from the right lane to the left lane without first ascertaining that he could change lanes with safety. Additionally, the State argues that Couldery was under a duty to maintain a proper lookout. This argument further lacks merit, for Couldery's "proper lookout" is evidenced by the fact that he saw Trooper Vincent's vehicle parked on the shoulder of the interstate and moved from the right lane to the left lane to maintain a safe distance from Trooper Vincent's vehicle. This Court is not convinced that Couldery violated section 63-3-603.

c) Good Faith Exception to Probable Cause
¶ 17. The State further argues that even if this Court determines that Couldery did not violate sections 63-3-601, 63-3-603, and/or 63-3-611, under Harrison v. State, 800 So.2d 1134 (Miss.2001), the stop was proper despite Trooper Vincent's mistake of law as to the traffic offense. In Harrison, the defendant was stopped by sheriff's deputies while driving 67-70 miles per hour in a construction zone.
¶ 18. At the time Harrison was stopped, the applicable statute provided as follows:
(1) It shall be unlawful for any person to operate a motor vehicle within a highway work zone at a speed in excess of the maximum speed limit specifically established for the zone whenever workers *965 are present and whenever the zone is indicated by appropriately placed signs displaying the reduced maximum speed limit.
Mississippi Code Annotated Section 63-3-516(1) (Supp.2000) (emphasis supplied).
¶ 19. The construction zone was marked with a 60 mile per hour speed limit and was clearly marked with orange barrels. There were no workers present in the work zone when the defendant was apprehended for speeding. After reviewing the defendant's driver's license and asking him a few questions, the deputies determined that Harrison had rented the vehicle in Texas and was presently en route to Alabama after flying to Texas. The deputies determined that, while Harrison's license was valid, Harrison had prior arrests for narcotics trafficking. The deputies suspected that there were drugs in the vehicle, and they requested that Harrison step out of the vehicle and away from the car. Harrison was then questioned as to whether he had any prior arrests, whether there were drugs in the car, and whether he would consent to a search of the vehicle. One of the deputies opened the car's rear door, and the deputies smelled the odor of raw marijuana. The deputies discovered 117 pounds of marijuana in Harrison's trunk, and Harrison was convicted of possession of marijuana with the intent to distribute.
¶ 20. On appeal, Harrison argued that because there were no construction workers present at the time of his apprehension, the speed limit was 70 miles per hour and not the posted construction zone speed limit of 60 miles per hour. Thus, argued Harrison, because he was not speeding, the police lacked probable cause to stop him. The Mississippi Supreme Court granted certiorari to determine if the provisions of section 63-3-516 controlled over the general speeding statutes. Strictly construing section 63-3-516, the supreme court concluded that the statute controlled over the general speeding statute, therefore workers must be present for the work zone speed limit to be in effect. The supreme court further determined that, although Harrison was not guilty of speeding, "the question of probable cause does not turn upon an ultimate finding of guilt of the offense for which one was stopped." Harrison, 800 So.2d at 1138 (¶ 17).
¶ 21. Quoting Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the supreme court reiterated that the "decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." The supreme court reviewed cases from other jurisdictions and agreed with the conclusion that probable cause based upon good faith and a reasonable basis is valid, despite a mistake of law. The supreme court found that, despite the absence of construction workers when Harrison was stopped, because Harrison violated the posted speed limit of 60 miles per hour "the deputies had an objective[ly] reasonable basis for believing that Harrison violated the traffic laws of Mississippi by exceeding the speed limit." Harrison, 800 So.2d at 1139 (¶ 21). The court further noted that "the trial court and half of the judges of the court of appeals interpret the law to find a violation." Id.
¶ 22. In contrast with the conflicting speed limit statutes in Harrison, there is no dispute that Couldery was not committing a traffic violation at the time Trooper Vincent stopped him. Section 63-3-601(4) clearly exempts roadways "designated and signposted for one-way traffic" and Interstate Highway 20 clearly falls within this exception. Thus, Officer Vincent had no reasonable basis to believe that Couldery was committing a traffic violation in driving *966 in the left-hand lane of the interstate. Under the totality of the circumstances, Officer Vincent lacked a reasonable basis for his stop, and the stop was not proper. Accordingly, the trial court erred in not suppressing all contraband which stemmed from this stop.
¶ 23. Assuming, arguendo, that Trooper Vincent had probable cause to pull Couldery over, we must determine under Terry if his subsequent actions were reasonably related to the stop. Our supreme court has determined that "[w]hen an officer is making a valid stop, and has not exceeded his parameters in dealing with the defendant, any search pursuant to probable cause is valid." Townsend v. State, 681 So.2d 497, 502 (Miss.1996) citing Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); McCray v. State, 486 So.2d 1247 (Miss.1986). In determining whether probable cause existed for a particular search, it must be information reasonably leading an officer to believe that then and there contraband or evidence material to a criminal investigation would be found. Rooks v. State, 529 So.2d 546 (Miss.1988). Except for a few specifically established exceptions, warrantless searches are per se unreasonable. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Under the automobile exception police may conduct a warrantless search of an automobile and any containers therein if they have probable cause to believe that it contains contraband or evidence of crime. California v. Acevedo, 500 U.S. 565, 576, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); see also Wyoming v. Houghton, 526 U.S. 295, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999); United States v. Ross, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). The evidence in support of probable cause "must be viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search." United States v. Muniz-Melchor, 894 F.2d 1430, 1438 (5th Cir.1990). Thus, taking into consideration Trooper Vincent's experience, training, and observations, when an officer is making a valid stop, and has not exceeded his parameters in dealing with the defendant, any search pursuant to probable cause is valid. Townsend, 681 So.2d at 502. Once again, in determining whether probable cause existed for a particular search, there must be information reasonably leading an officer to believe that then and there contraband or evidence material to a criminal investigation would be found. Rooks, 529 So.2d at 546.
¶ 24. The State argues that Officer Vincent had probable cause to search the vehicle because of Couldery's bloodshot eyes, his "physical size, profession as owner of a gym, trip destination" and trip transportation. While this Court is aware that the presence of bloodshot eyes may be a contributing factor in establishing probable cause, under the totality of the circumstances this Court is not inclined to agree that probable cause existed. Having a large frame and owning a gym do not necessarily indicate that a person is on steroids, much less that the person is trafficking steroids. Although Couldery's travel plans may be unusual, flying to a vacation and driving home for the return is not indicative of illegal activity. Under the totality of the circumstances, even if the stop was proper, Officer Vincent should have ticketed Couldery and left him to journey home. Nothing in the record supports a finding that Vincent was justified in further detaining Couldery beyond the ordinary scope of a brief traffic stop. Accordingly, the trial court erred in denying Couldery's motion to suppress all contraband discovered as a result of the search.
*967 ¶ 25. Because the stop was improper, all evidence obtained from the stop should have been suppressed. Accordingly, there is no need to discuss the other issues raised by Couldery on appeal.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
KING, C.J., BRIDGES, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.