# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-KA-01191-SCT

*HECTOR HERNANDEZ GONZALES AND*
*JUAN GONZALEZ-TORRES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/22/2006 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DAVID G. HILL |
| | D. GILL BAKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOHN R. HENRY |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/30/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE SMITH, C.J., DICKINSON AND LAMAR, JJ.

### DICKINSON, JUSTICE, FOR THE COURT:

¶1.     A law enforcement officer stopped a vehicle which did not appear to have a tag. After obtaining consent to search the vehicle, the officer found sixty pounds of marijuana inside. Although the vehicle had no regular tag, it had a temporary tag taped to the back window in the lower-left corner. The question presented is whether the officer lacked reasonable suspicion to stop the vehicle, rendering the search improper and the evidence obtained inadmissible.

STATEMENT OF THE FACTS

¶2. While waiting in the median on Highway 78 near Olive Branch, Mississippi, Highway Patrol Trooper M/Sgt. Gayle McMullin observed an east-bound, blue Dodge Durango, which appeared to have no tag displayed. Trooper McMullin stopped the Durango and engaged the driver, identified as Hector Hernandez Gonzales, in a conversation concerning his travel route. Trooper McMullin noted on her initial, written report that, as she questioned Gonzales about his destination, she became suspicious because his demeanor changed. Specifically, she reported that the driver appeared "very nervous" and looked to the passenger, Juan Gonzalez Torres, when questioned about his direction of travel. Trooper McMullin was later to testify, "When I asked him which route he was going, he looked over to the passenger, like to get an idea of where to go or what to say, and by his body language and his nervousness and the odor of marijuana, I called for a canine."

¶3. Trooper McMullin notified Gonzales that she pulled the vehicle over because there was no tag displayed on the vehicle. Gonzales pointed out the temporary paper tag posted on the lower lefthand corner of the rear window of the vehicle. Trooper McMullin testified that she did not see the paper tag until the driver pointed it out to her and she shined her flashlight on the area. Trooper McMullin then radioed Trooper Brian Magee, the canine officer, for backup while she compared the papers Gonzales had given her with the information on the tag. By the time she finished writing out the tag citation, Trooper Magee and the canine arrived.

¶4. The driver, Gonzales, and passenger, Torres, consented to a vehicle search. Trooper Magee found marijuana residue and loose marijuana in the center console area of the vehicle,

2

necessitating a further search. The canine alerted to the back rear passenger door. The vehicle was then taken to a secure location and searched further. The officers found a suitcase in the back seat which contained twenty-five bundles, or roughly sixty pounds, of marijuana.

¶5. In January 2005, the DeSoto County Grand Jury returned an indictment against both Gonzales and Torres for possession of a controlled substance with intent to distribute. The defense filed a motion to suppress the evidence, claiming Trooper McMullin did not have reasonable suspicion to stop the vehicle. The trial judge held a suppression hearing and took the testimony of Troopers McMullin and Brian Magee. The judge then requested that the parties brief the issue, which he narrowed to the "actual initial stop and up to the point of where the officer indicate[d] she smelled marijuana." After full briefing and a review of the pleadings, the trial judge entered an order denying the defendants' motion to suppress the evidence.

¶6. Thereafter, the defendants reached an agreement with the State which resulted in a stipulation of certain factual findings, and an agreement to a bench trial on a new charge of possession of a controlled substance, reserving unto the defendants the right to appeal the issue before us today.

¶7. The defendants proceeded to trial on the stipulation, admitting constructive possession of the marijuana. Moreover, the defendants waived their right to a jury and right of confrontation, relying instead on appellate review of the suppression hearing to overturn their convictions. On the record, the defendants' counsel noted, "our defense in this case is a technical defense, and we're simply trying to get this case out of the [t]rial [c]ourt and into

3

the [a]ppellate [c]ourt." The trial judge, upon admitting the stipulation of facts into the record, found sufficient evidence to convict Gonzales and Torres, and sentenced them each to fifteen years in the custody of the Mississippi Department of Corrections.

¶8.　The defendants assert two errors on appeal: (1) the trial court erred in admitting evidence uncovered after the officer's basis for pulling the vehicle over proved unfounded, therefore making the stop illegal; and (2) the trial court erred in failing to suppress all statements made prior to the defendants being Mirandized in Spanish.

**ANALYSIS**

¶9.　As stated in *Carney v. State*:

> The rule is simple. Unless the marijuana was discovered during a legal search, it may not be seized. If it was illegally seized, it may not be admitted into evidence. It is therefore important to examine the legality of the particular intrusions which enabled the police to see this marijuana to determine if these intrusions were outside the legitimate scope [of the police's authority].

*Carney*, 525 So. 2d 776, 785 (Miss. 1988). Accordingly, this Court must determine whether Trooper McMullin was justified initially in stopping the defendants.

**I.**

¶10.　The defendants contend that Trooper McMullin had no "specific and articulable facts" from which a "reasonable suspicion" of a traffic offense or other crime could be gleaned to support and justify a traffic stop or a *Terry* stop. *See Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The standard of review for reasonable suspicion is somewhat more complicated than other standards by which this Court reviews trial court determinations. The United States Supreme Court has sought to clarify the standard by stating:

4

The principal components of a determination of reasonable suspicion or probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion or to probable cause.

*Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996). Further, the Supreme Court noted that the "first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact." *Id.* Thus, historical facts are reviewed only for clear error,[1] while determinations of reasonable suspicion are reviewed de novo. *Id.* at 699; *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (Miss. 1999).

¶11.   The Fourth Amendment to the United States Constitution provides that all persons shall be secure "in their persons, houses, papers, and effects, against unreasonable searches and seizures" and that "no warrants shall issue, but upon probable cause." U.S. Const., amend. IV; *Michigan v. Summers,* 452 U.S. 692, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981) (incorporating the Fourth Amendment to states through the Fourteenth Amendment); *see also* Miss. Const. art. III, § 23 (1972); *Floyd*, 749 So. 2d at 114 (noting that the Fourth Amendment to the United States Constitution and Article III, Section 23 of the Mississippi Constitution contain almost identical language expressing an individuals right to be free from unreasonable searches and seizures).

¶12.   Both this Court and the United States Supreme Court have recognized several exceptions to the Fourth Amendment's general proscription against warrantless searches.

---

[1]The United States Supreme Court has noted that background facts and inferences made by local trial judges and law enforcement officers provide the context for the historical facts, and "when seen together . . . deserve deference." *Ornelas*, 517 U.S. at 699.

Of interest in this case is the warrant exception for non-custodial investigatory stops, also known as *Terry* stops.[2]

¶13.    The United States Supreme Court has noted that swift and necessary actions by officers "must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." *Terry*, 392 U.S. at 20. "To stop and temporarily detain is not an arrest, and the cases hold that given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest." *Singletary v. State*, 318 So. 2d 873, 876 (Miss. 1975). Moreover, the Supreme Court noted that it is imperative that the facts be judged against an objective standard: "Would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry*, 392 U.S. at 21-22 (citing *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925); *Beck v. Ohio*, 379 U.S. 89, 96-97, 85 S. Ct. 223, 13 L. Ed. 2d 142 (1964)).

¶14.    The traditional reasonableness standard under U.S. Supreme Court jurisprudence is determined by balancing an individual's privacy interests against legitimate governmental interests. *See e.g., Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652-53, 115 S. Ct. 2386, 132 L. Ed. 2d 564 (1995). To determine whether the search and seizure were unreasonable, the inquiry is two-fold: (1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the

---

[2]The Mississippi Supreme Court has recognized exceptions to the warrantless search prohibition in the following cases, *inter alia*: *White v. State,* 842 So. 2d 565 (Miss. 2003) (good faith exception); *Shook v. State*, 552 So. 2d 841 (Miss. 1989) (consent exception); *Taylor v. State*, 733 So. 2d 251 (Miss. 1999) (exigent circumstances exception and plain view exception).

interference in the first place. *Terry*, 392 U.S. at 19-20. In order to satisfy the first prong, the law enforcement officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21.

## II.

¶15. The defendants assert that their vehicle had a tag in plain view and, therefore, Trooper McMullin had no reasonable suspicion that the vehicle had no tag; and because Trooper McMullin had no probable cause or reasonable suspicion to pull them over, all fruits of the illegal stop should be suppressed. Accordingly, we shall set forth the specific facts and circumstances of the stop.

¶16. Trooper McMullin repeatedly stated that she pulled over the defendants' vehicle because it appeared not to have a tag.[3] Specifically, she testified that upon approaching the driver, she "did not see a tag at all." Although no evidence of tint rating was elicited at the suppression hearing, testimony indicated that the windows of the Dodge Durango were very dark. Trooper McMullin testified, "After I told Mr. Gonzales the reason for the stop, he pointed out to me that he did have a paper tag on the back window, but I did not see it. The window was very tinted, and I did not see it until I walked back there and looked at it with my flashlight."

---

[3]Throughout the record, Trooper McMulllin never wavered in this assertion. In her initial written report, she specifically noted that the Dodge had "no tag displayed." Additionally, at the suppression hearing, McMullin repeatedly testified to this fact.

Q:     Tell me what the basis of the stop was on that evening.

A:     He did not have a tag, proper tag displayed on the vehicle.

¶17. Two photographs of the back of the vehicle showing the tag were introduced. The first was taken from the angle of the Trooper's car behind the Durango at the time of the traffic stop. While a white rectangle is visible in the lower lefthand corner of the back glass, the numbers or any identifying marks are illegible from that distance. Additionally, it is evident that at least one other set of trooper car lights are shining in that direction, thereby illuminating the windows further. No other tag is displayed on the back tailgate.

¶18. The second photograph is a close-up picture of the tag with the numbers clearly visible. It appears that, in this photograph, one light is concentrated in the tag area. Troopers McMullin and Magee noted that the photographs admitted into evidence were taken with many lights shining onto the paper tag, without which the tag was indistinguishable. Interestingly, Trooper McMullin issued a citation to Gonzales for having no tag displayed, even though she noted the temporary tag number on the ticket.

¶19. The State contends that, even if the vehicle had a valid tag, it was not "conspicuously displayed," as required by the statute. Thus, the State argues, Trooper McMullin was within her authority to pull the vehicle over to check for a tag, and to check the expiration of the tag (if found) or to see if it was valid. Therefore, the State maintains, the stop was legal and not at odds with the Fourth Amendment. We agree.

¶20. The statute at issue provides that vehicles operated on Mississippi's highways must have tags "conspicuously displayed on the vehicle being operated in such a manner that it may be easily read." Miss. Code Ann. § 27-19-23(Rev. 2006). In light of this clear statutory language, it is not enough that the vehicle actually had a tag. If the tag was not

"conspicuously displayed" and "easily read," Trooper McMullin was fully justified in making the stop.

¶21.    Gonzales and Torres argue that because Trooper McMullin's written report regarding the incident contained no references to her detection of the odor of marijuana, the stop was pretextual.  The defendants cite ***Whren v. United States***[4] and ***United States v. Escalante***[5] in support of their position that the traffic stop was illegal.   However, both ***Whren*** and ***Escalante*** are distinguishable from this case.  In each of those cases, the officer had a suspicion that some type of criminal activity was occurring but was not aware of what that activity was.  *See **Escalante***, 239 F.3d at 679; ***Whren,*** 517 U.S. at 808.  The officer therefore used the pretext of a traffic stop to further his investigation.  In the present case, however, the trial court found that Trooper McMullin reasonably suspected the Dodge Durango had no tag.  The record contains ample evidence to support that finding, and it will not be disturbed on appeal.

¶22.    The defendants also cite cases in which this Court and the Court of Appeals have ruled that actions which do not constitute criminal offenses are not objective bases for a stop, and, therefore, the stops are illegal.  ***McNeely v. State***, 277 So. 2d 435 (Miss. 1973); ***Couldery v. State***, 890 So. 2d 959 (Miss. Ct. App. 2004).  In ***Couldery***, the officer initiated a traffic stop for driving in the left-hand lane on the interstate.  After reviewing the statutory offenses the officer put forth as the basis for the citation, the Court concluded that the actions of the driver did not constitute a criminal offense – that driving in the left-hand lane on the

---

[4]517 U.S. 806, 116 S.Ct. 1769, 135 L. Ed. 2d 89 (1996).

[5]239 F.3d 678, 680-81 (5th Cir. 2001).

9

interstate was not illegal. Therefore, the officer's misapprehension of the law precluded the stop from being valid. ***Couldery***, 890 So. 2d at 963.

¶23. Here, Trooper McMullin noted in her initial, written report and testified at the suppression hearing that the purpose for the stop was "no valid tag displayed." Highway Patrol officers have been given the statutory authority to enforce all traffic laws, rules and regulations of the State of Mississippi. *See* Miss. Code Ann. § 45-3-21(1)(a) (2007)(Rev. 2004). Failure to conspicuously display a tag in such a manner that it may easily be read is an offense under Mississippi Code Section 27-19-323 (Rev. 2006). Moreover, Mississippi Code Section 27-19-40 regulates "special in-transit tags" like that at issue here, and requires that such tag be "properly displayed" and "displayed in plain view." *See* Miss. Code Ann. § 27-19-40(1), (1)(c), (4)(Rev. 2006).

¶24. Trooper McMullin testified she stopped the Dodge Durango because she suspected a violation of these laws. The statutes require not only the existence of a valid tag, but also that the tag be displayed in plain view. Evidence was produced that the Dodge Durango's windows were tinted, making the tag difficult to see or read. Indeed, even though a valid tag was taped inside the back window of the vehicle, the trooper issued a traffic citation for violation of the statute.

¶25. From the evidence in the record, we cannot say that the trial court committed clear error in finding reasonable suspicion to make the stop. Thus, the stop was justified at its inception, and the State has satisfied the first prong.

¶26. Additionally, because the subsequent search of the vehicle was incidental to the officer smelling marijuana emanating from the vehicle, and valid consent to search was given

10

by the defendants, an analysis of the second prong is unnecessary. Having found the initial stop reasonable, we affirm the trial court's admission of evidence.

## IV.

¶27. The defendants next contend that the trial court erred in failing to suppress all statements made prior to their being Mirandized in Spanish. *See Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). After a thorough review of the record, however, we were unable to find where the trial court considered any statements made prior to the defendants being notified of their *Miranda* right in Spanish. Indeed, the record is clear – the trial judge based all findings on the stipulation of facts submitted into evidence by the defendants themselves.

¶28. Where an argument has never been raised before the trial court, we repeatedly have held that "a trial judge will not be found in error on a matter not presented to the trial court for a decision." *Purvis v. Barnes*, 791 So. 2d 199, 203 (Miss. 2001). This issue is not properly before this Court, thus, it is without merit.

## CONCLUSION

¶29. We find that Trooper McMullin was justified in her reasonable suspicion that the defendants' vehicle bore no tag. Therefore, the initial stop was legal, because the trooper could articulate an objective basis for the traffic stop. Because the issue of whether the State could introduce statements made before the defendants were Mirandized in Spanish was not presented to the trial court, this Court is precluded from addressing it on appeal.

¶30. **AS TO HECTOR HERNANDEZ GONZALES: CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE, TO-WIT: MARIJUANA, FIVE(5) KILOGRAMS OR MORE AND SENTENCE OF FIFTEEN (15) YEARS IN**

11

THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. UPON RELEASE, THE APPELLANT IS PLACED UNDER FIFTEEN (15) YEARS OF POST-RELEASE SUPERVISION, WITH CONDITIONS. SAID SENTENCE SHALL RUN CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. APPELLANT SHALL BE GIVEN CREDIT FOR 322 DAYS TIME SERVED. AS TO JUAN GONZALES-TORRES: CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE, TO-WIT: MARIJUANA, FIVE(5) KILOGRAMS OR MORE AND SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. UPON RELEASE, THE APPELLANT IS PLACED UNDER FIFTEEN (15) YEARS OF POST- RELEASE SUPERVISION, WITH CONDITIONS. SAID SENTENCE SHALL RUN CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. APPELLANT SHALL BE GIVEN CREDIT FOR 348 DAYS TIME SERVED.

SMITH, C.J., WALLER AND DIAZ, P.JJ., EASLEY, CARLSON, RANDOLPH AND LAMAR, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.